## BARKER, EXECUTOR &c. of HENRY MORGAN, *v.* WOODS and others.

A testator directed his executors to invest a fund, the interest of which he gave to his wife, and after her decease, he gave the principal to his two children equally. *Held,* that the children took vested interests in the legacy at the death of the testator.

The equity of a married woman for a settlement, does not survive to her children; and where there is no contract for a settlement, nor any proceeding by the wife to enforce one during her life; the creditors of the husband are entitled to a legacy bequeathed to her, and her children have no equity to prevent its payment to them.

August 7 ; Sept. 2, 1843.

THE bill in this cause was filed by the surviving executor of Henry Morgan, asking the direction of the court as to the payment of certain proceeds of the estate, upon which there were conflicting claims. The testator died in December, 1813, leaving a widow, and two infant children, Henry P. and Ann Maria Morgan. By his will he directed his estate to be converted into money by his executors, and invested on good real security. He then gave one third of the interest thereof to his wife for life, and after her death, he disposed of the principal in these words : " After the decease of my said wife, I give and " bequeath the principal of the said one third part of my said " estate, unto my two children, Henry Purdy Morgan and . " Ann Maria Morgan, equally to be divided between them, share " and share alike." After another provision relative to his wife, he proceeded to give to his son one third part of the net proceeds of his estate, to be paid to him when he should obtain his majority, and the income in the mean time to be applied for his use. The remaining one third of the net proceeds, he gave to his daughter, to be paid to her on her becoming of full age or being married ; the income thereof to be applied for her use in the mean time. There were cross remainders as to these two thirds, in case either of his children should die before they became 21 years of age without marriage or leaving issue.

The testator's daughter was married in 1826 to Richard H. Woods, and in 1830 she died, leaving one child, Ann Mary Woods, who is an infant, and is one of the defendants in this suit. The widow of the testator died in 1841. At this time, R. H. Woods was insolvent, and was indebted to Minott Mitchell in more than the half part of the third of the estate of the testator, which the executors had kept invested to pay the interest of it to the widow. After the widow's death, R. H. Woods assigned his late wife's half of that third part, to Elisha Horton, in trust for the infant, Ann Mary. Subsequently, M. Mitchell, having purchased a judgment against R. H. Woods, on which an execution was returned unsatisfied, filed a creditor's bill against him in this court, and enjoined the surviving executor of Henry Morgan, from paying over to the trustee Horton, the half part of the fund assigned to the latter by Woods. R. H. Woods then took out letters of administration on the estate of his wife, and assigned the fund to Mitchell.

The bill was filed against R. H. Woods, Ann Mary Woods, E. Horton, and Henry P. Morgan. On the death of the latter, pending the suit, his administrator, Thomas Purdy, and also Minott Mitchell were made parties by a supplemental bill.

Mitchell insisted that the fund in question vested in Ann Maria Morgan on the death of the testator; that it belonged to her husband, Woods; that his transfer of it to Horton, being voluntary, was fraudulent as against his creditors; and that by his subsequent assignment of it, or by force of the creditor's suit against him, Mitchell is entitled to receive the fund and apply it on his debt.

It was claimed on the other hand, that the bequest to Mrs. Woods lapsed in consequence of her death in the life-time of her mother, and on the death of the latter, went to Henry P. Morgan and the infant Ann Mary as the next of kin; and if it vested in Mrs. Woods, the infant is entitled to enforce her mother's equity for a settlement.

*Smith Barker*, for the complainant.

*W. Silliman*, for M. Mitchell and R. H. Woods.

Barker, Executor &c., v. Woods.

*J. M. Webster*, for E. Horton and T. Purdy.

*I. O. Barker*, for Ann Mary Woods.

THE ASSISTANT VICE-CHANCELLOR. *First.* As the will contained a positive direction to convert the property bequeathed by Henry Morgan into money and invest it, it is all to be regarded as personalty in equity.

There is no doubt but that the bequest in question to Ann Maria Morgan, regarding it as personal estate, vested in her upon the death of her father.

In 2 Will. on Executors, 776, the rule is thus expressed— " Where a person bequeaths a sum of money, or other personal " estate, to one for life and after his decease to another, the in- " terest of the second legatee is vested, and his personal represen- " tatives will be entitled to the property, though he dies in the " life-time of the person to whom the property is bequeathed for " life."

The case of *Pye* v. *Linwood*, (6 London Jurist Rep. 618,)(*a*) before Sir Knight Bruce, V. C., is directly in point. And see *Shattuck* v. *Stedman*, (2 Pick. R. 468,) and *Birdsall* v. *Hewlett*, (1 Paige R. 32, per Chancellor.)

*Second.* The legacy having vested in Mrs. Woods, can her infant daughter now insist upon a settlement out of it, as the mother doubtless could have done, were she in life and a defendant here ?

I have examined diligently to see if I could find some valid ground to sustain this alleged equity in the infant, and regret that my search has proved unavailing. It is clear, that when the mother has taken no step to enforce her equity for a settle-ment, and has no contract for it, her children surviving her have no claim upon the estate as against her husband ; that the equity for a settlement is personal to the wife, and does not survive to her issue.

There were some early decisions and dicta in England, which favored the extension of this equity to the children of

(*a*) And see *Scurfield* v. *Howes*, (3 Bro. C. C. 90.) 1 *Roper on Leg.* 500.

the wife. Thus in *Wytham* v. *Cawthorn*, (1 Eq. Cas. Ab. 392, pl. 1,) in a suit by the husband, as administrator to his wife against trustees for her portion, it was decreed to be settled on him for life, then on his son for life, then to the issue of the son, and failing issue, the father to have it should he survive the son.

In *Grosvenor* v. *Lane*, (2 Atk. 180,) Lord Hardwicke said that Lord King had previously made a decree in that matter, ordering a maintenance for the infant child out of her deceased mother's portion, against the husband, and he expressed his approval of the equity thereby established. There were letters in that case, which went to establish the right of the child against the husband. Sir Thomas Plumer, in *Lloyd* v. *Williams*, hereafter cited, shows from the Register's Book, that Lord King's decree, referred to by the Chancellor in *Grosvenor* v. *Lane*, was made upon a deed settling the property in question. It is, therefore, no authority for the infant's independent equity.

It did not finally have the entire approval of Lord Hardwicke. For in *Hearle* v. *Greenbank*, (3 Atk. 717. S. C. 2 Ves. Sen. 298,) he said that he could find no case where the assignees of a bankrupt husband, after the death of his wife, were compelled to make a provision for her children out of her estate. He declined to say that it could not be done, but he distinctly said that there was no precedent for it.

*Cockel* v. *Phipps*, as it is reported in 1 Dick. R. 391, seems to be a decision that the issue of the wife have an equity for a settlement against her surviving husband. But the examination of the learned Vice-Chancellor, in *Lloyd* v. *Williams*, proves that the decree in *Cockel* v. *Phipps* was made upon articles for a settlement.

Since the year 1765, when Lord Northington decided *Scriven* v. *Tapley*, (2 Eden's R. 337 ; Ambler's R. 509, S. C.) the current of authority has been uniform against the independent equity of the children. In that case, the Master of the Rolls, Sir Thomas Sewell, had decided in favor of the equity of the issue. His decree was reversed by Lord Northington, who

held that it was personal to the wife, that it had not been carried farther, and that it ought not to be extended.

In *Murray* v. *Lord Elibank*, (10 Ves. 84,) the bill was filed by the issue to carry into effect a decree for a settlement made in favor of their mother, who died before the Master made a report. And the question on demurrer was, whether even the decree would enable the children to maintain the equity which it provided for their mother and themselves. The demurrer was overruled.

In 13 Ves. 1, the same case came on before Sir William Grant, Master of the Rolls, on the merits, and he sustained the bill. In the course of his opinion he speaks of the substantive independent right of the children to a settlement, as a doubtful point, referring to *Grosvenor* v. *Lane* and *Cockel* v. *Phipps*, before cited.

Finally, in *Lloyd* v. *Williams*, (1 Madd. R. 450,) the question was distinctly presented, and was elaborately argued by some of the most eminent counsel then at the equity bar in England, of whom I need only name Sir Samuel Romilly, Sir Arthur Piggott, and Mr. (now Vice-Chancellor) Shadwell. The Vice-Chancellor, Sir Thomas Plumer, in an able and elaborate judgment, decided that the children have no right to a settlement, independent of a contract or a decree.

This decision has never been disturbed in England.

Mr. Justice Story considers it to be the settled doctrine of equity. (2 Story's Eq. 644, § 1417.) In *Jasper* v. *Maxwell*, (Devereux's Eq. R. 357,) it was decided in North Carolina that the children of the deceased wife had no equity to prevent the husband from obtaining her trust estates, as her administrator, to his own use.

There is, therefore, no ground for the relief of the infant defendant in this case, founded upon her mother's equity, for a settlement.(*a*)

---

(*a*) See *De La Garde* v. *Lempriere*, (6 Beavan, 344,) where the Master of the Rolls decided, (July 3, 1843,) that the children have no equity for a settlement, although a bill has been filed for administration, and then the wife dies before any order for a settlement. This overrules *Steinmetz* v. *Halthim*, (1 Glyn & Jam. 64.) And see 1 Keen, 132.

*Third.* On the death of Mrs. Woods, her husband became entitled absolutely to the fund in question. He was largely indebted, and his conveyance of the fund, for the benefit of the infant, without consideration, however just and praiseworthy considered in reference to her, was fraudulent as against his creditors, and cannot be permitted to stand in the way of their legal remedies.

Nothing passed to Mr. Mitchell by Woods' assignment to him. His right to his wife's things in action was perfect without administration ; and his previous transfer for his daughter's use, was valid against him and any voluntary assignee under him for a precedent consideration.(*a*)

The fund, after paying the costs of the several parties in this suit, must go to the receiver in the creditor's suit of Mitchell against Woods.

I have examined and expressed my views of the case on the facts as presented by the pleadings and the stipulation. But no decree can be made against the infant without explicit proof of the material facts. The cause will have to be set down again upon the proofs. These may be made either before an examiner or on a reference to a master, at the complainant's option. In the mean time, the cause will stand over.(*b*)

---

(*a*) See *Brownell* v. *Curtis*, reported in 1845, (10 Paige's R. 210, 218.)

(*b*) A reference was made to a master to take proofs.

On his report that the facts stated in the bill were true, a decree was made conformably to the decision.