WEBB VS. MELOY and another, imp.

MORTGAGEE. *Prior and subsequent mortgagees; their respective rights.*— (1) *Effect of purchase of equity of redemption by prior mortgagee.* (2) *Effect of a sale of the land by him.* (3) *Where the purchase money is not paid.* (4) *Protection of purchaser at such sale.*
PRESUMPTION: (5) *Filing of* lis pendens.

1. Where the owner of a prior mortgage purchases the equity of redemption, his prior lien is not merged in the title thus purchased, so as to become subject to a second mortgage given by his vendor.
2. But where, after such purchase, the prior mortgagee sold the land at private sale to a third party for a price sufficient to pay off both mortgages, as well as the sum paid for the equity of redemption, his mortgage was satisfied by such sale, and on foreclosure of the second mortgage equity will direct the proceeds of the foreclosure sale to be first applied to the payment of the second mortgage.
3. The fact that on such private sale no cash has been paid, but the whole amount of purchase money is secured by a mortgage back of the premises, does not change the effect of such sale, but it must be treated as equivalent to a sale for cash.
4. In what manner equity would protect the purchaser at such private sale, in the decree foreclosing the second mortgage, if it appeared that his vendor was insolvent, is not decided here; there being no pretense in this case that such vendor was not able to respond for any breach of his covenants.
5. In a mortgage foreclosure where the record is *silent* on the subject, it must be *presumed*, in favor of the judgment, that notice of *lis pendens* was duly filed. *Catlin v. Pedrick* (17 Wis., 88), distinguished.

APPEAL from the Circuit Court for *La Fayette* County.

Action to foreclose a mortgage executed by the defendants Neugent and wife to the plaintiff, to secure the payment of $130, and dated and recorded September 22, 1869. The following facts appear by the pleadings and proofs: On the 18th of November, 1867, Neugent and wife executed to one Kennedy a mortgage on the same lands to secure the payment of $900 and interest. The mortgage was given to secure payment of the purchase money of the premises, and was recorded on

the same day. Neugent made the first payment thereon, which was $200, and never paid any part of the balance except the interest thereon for one year. Neugent and wife also executed to one Barlow another mortgage on the same premises for $356.80 and ten per cent. interest, dated April 17th, and recorded April 30, 1869. He paid no portion of this mortgage. Both of these mortgages were duly assigned to the defendant *Meloy* in November, 1869.

*Meloy* brought an action against Neugent to recover another demand against him, and attached Neugent's interest in the mortgaged premises, September 17, 1869. Judgment was rendered in said action against the latter on the 15th of December following, for $162.37, which became a lien on said premises from the date of the service of the attachment.

On the first day of May, 1872, *Meloy* paid the taxes on the mortgaged premises for the years 1867 and 1868, to the amount of $50.40.

In November, 1869, *Meloy* purchased of Neugent and wife the equity of redemption in the mortgaged premises, and paid them therefor $125. By some arrangement between them, Neugent and wife quitclaimed their interest in the premises to one McFeeley, who conveyed the same, also by a quitclaim deed, to the defendant *Meloy*. March 22, 1870, the defendant *Meloy* conveyed the premises to the defendant *Blain*, by a warranty deed, for $2,025; and the latter executed to the former a mortgage thereon to secure the payment of the whole of the purchase money.

Upon the foregoing facts the circuit court directed the mortgaged premises to be sold, and adjudged that the plaintiff's mortgage should be first paid out of the proceeds of such sale. The defendants *Meloy* and *Blain* appealed.

*P. A. Orton,* for appellants, contended that *Meloy's* prior liens were not merged when he purchased the equity of redemption, it being to his interest to keep such liens alive, and such being his actual and just intention (*Goulding v. Bunster,* 9 Wis., 515;

*James v. Morey,* 2 Cow., 284; *Clift v. White,* 2 Kern., 539; *Gibson v. Crehore,* 3 Pick., 475; *Campbell v. Carter,* 14 Ill., 286; *Jarvis v. Frink,* id., 396; *Weiner v. Hentz,* 17 id., 259; *Sheldon v. Edwards,* 35 N. Y., 279; *Bascom v. Smith,* 34 id., 325); that there could be no merger for the further reason that an outstanding right or estate in *Webb* intervened between *Meloy's* liens and the acquisition by him of the equity of redemption (*Hunt v. Hunt,* 14 Pick., 384; *Jones v. Varney,* 8 Cush., 137; *Millspaugh v. McBride,* 7 Paige, 510; *Cook v. Brightly,* 46 Pa. St., 439); and that the covenant against incumbrances, contained in *Meloy's* deed to *Blain,* did not estop him from denying such merger as against *Webb.* 2 Washb. R. P., 479; *Doe v. Errington,* 6 Bing. N. C., 79 (37 Eng. C. L., 289); *Averill v. Wilson,* 4 Barb., 180; *The Cohoes Co. v. Goss,* 13 id., 137; *Wright v. Hazen,* 24 Vt., 143; *Glidden v. Unity,* 10 Foster, 104; *Miller v. Holman,* 1 Grant's Cases, 243. He also contended that the judgment should be reversed because the court did not find, and there is no evidence, that any notice of *lis pendens* was ever filed.

*H. S. Magoon,* for respondent, to the point that the judgment would not be reversed merely for the failure of the court below to find the fact that a notice of *lis pendens* had been filed, cited *Curtis v. Hitchcock,* 10 Paige, 399; *Potter v. Rowland,* 4 Seld., 448; *Carberry v. Benson,* 18 Wis., 489; *Bank v. Eldred,* 20 id., 196; R. S., ch. 125, sec. 40. 2. To the point that *Meloy's* lien merged in the legal estate which he acquired by purchasing the equity of redemption, and that, after conveying to *Blain* with covenant that the land was free of all incumbrances, *Meloy* was estopped from denying such merger, he cited 1 Hilliard on Mort., 480, secs. 61, 62; *Waugh v. Riley,* 8 Met., 290–294; *James v. Morey,* 2 Cow., 284, 300; *Gardner v. Astor,* 3 Johns. Ch., 53; *James v. Johnson,* 6 id., 417; *Clift v. White,* 15 Barb., 70; *Forbes v. Moffatt,* 18 Ves., 390; *St. Paul v. Dudley,* 15 id., 173; *Hagshaw v. Yates,* 1 Strange, 240; *Wade v. Paget,* 1 Brown Ch. Cas., 364; *Selby v. Alston,* 3 Ves., 339; *Lockwood v. Sturde-*

*vant*, 6 Conn., 373 ; *Sutphen v. Cushman*, 35 Ill., 186 ; *Nichol-son v. Halsey*, 1 Johns. Ch., 417 ; *Mills v. Comstock*, 5 id., 214; *Starr v. Ellis*, 6 id., 393 ; *Wheelwright v. Loomer*, 4 Edw., 232 ; 4 Kent's Com., 102, 103.

LYON, J.    I.  At the time *Meloy* took the conveyance of the equity of redemption in the mortgaged premises, it is very clear that in equity there was no merger of his prior incumbrances with the title thus conveyed to him.   In equity such incumbrances doubtless remained in full force and paramount to the lien of the plaintiff's mortgage, notwithstanding such conveyance.   We think that the learned counsel for the appellants has fairly demonstrated, on principle and by authority, that this proposition is correct.

But the sale and conveyance of the mortgaged premises by *Meloy* to *Blain* for a price sufficient to pay off all of the incumbrances in full, including the mortgage of the plaintiff, together with the sum paid for the equity of redemption, presents the case in a very different aspect.   The fact that *Meloy* received no cash on such sale, but took back a mortgage for the whole price, is immaterial.   There is no claim that the security is not ample ; the interest reserved is ten per cent., payable annually, and it may be that *Meloy* preferred the mortgage to a cash payment.   However that may be, we think with the circuit judge that the giving of the mortgage for the price is equivalent to a cash payment, and that the case is to be determined precisely as though *Meloy* had received $2,025 in cash for the premises.

Had *Meloy* foreclosed the Kennedy and Barlow mortgages instead of buying the title of Neugent and wife, the mortgagors, and had the premises been sold on such foreclosure for the price paid by *Blain* therefor, as a matter of course the plaintiff would have been entitled to have his mortgage paid out of the proceeds of such foreclosure sale.   What difference can it make that, instead of foreclosing, *Meloy* purchased the equity of redemption, and then sold the premises at private

sale for a sum sufficient to pay off and discharge all of the incumbrances? We can perceive no difference in principle in the two methods, and we think that the circuit judge held correctly that equity will, under the circumstances of this case, regard the sale to *Blain* for $2,025, as equivalent to the sale of the premises for the same sum on a foreclosure of the prior mortgages. This principle seems so manifestly just and equitable that argument is scarcely needed in support of it. Why should *Meloy* obtain any greater rights by his voluntary purchase and sale of the premises, than he would have obtained had they been sold for the same sum on his foreclosure of the Kennedy and Barlow mortgages? No reason or justice is perceived in keeping alive the prior incumbrances for the benefit of *Meloy* after he has received the full amount of them and sufficient to repay the sum paid for the equity of redemption, and to pay the plaintiff's mortgage, by his sale to *Blain*. And inasmuch as there is no claim or pretense that *Meloy* is not pecuniarily responsible, and fully able to respond in damages for any breach of his covenants in his conveyance to *Blain*, there seems to be no good reason why such prior incumbrances should be kept alive for the benefit of *Blain*. How the case would stand were *Meloy* insolvent, it is not necessary to determine here. The substance of the whole matter is, that *Meloy* has received money (or its equivalent) which equitably he ought to apply in payment of the plaintiff's mortgage. Failing to do so, if the premises are sold to satisfy such mortgage, and *Blain's* title is thereby defeated, *Meloy* must respond to *Blain* in damages for breaches of his covenants contained in the conveyance to the latter.

II. The bill of exceptions purports to contain all of the testimony given on the trial, and the record before us does not furnish the slightest affirmative evidence that the notice of the pendency of the action required by statute was filed in the office of the register of deeds. R. S., ch. 124, sec. 7. Neither does the record show that there was no proof before the court

of the filing thereof. It is silent on the subject. Proof of such filing should have been made, or the judgment is irregular. But it was not necessary to make such proof at the trial. It could as well and as effectually have been made before or after the trial. It has nothing whatever to do with any of the issues in the action. Hence the fact that such proof is not contained in the bill of exceptions, which only contains the testimony given on the trial, is by no means conclusive that the court, when it rendered judgment, had not such proof before it. Indeed, we must presume in favor of the regularity of the judgment (nothing appearing in the record to the contrary), that the court had before it proof of the due filing of such notice. Such must be the presumption, unless the record shows affirmatively, as in the case of *Catlin v. Pedrick*, 17 Wis., 88, that the requisite proof was not made. Upon this record, therefore, the objection that the judgment is irregular for the reason that no proof of filing a *lis pendens* was given, is not available to the appellants.

It follows from the views above expressed, that the judgment of the circuit court should be affirmed.

*By the Court.*— Judgment affirmed.