## BIRNIE et al. VS. MAIN.

1. STATUTE OF LIMITATIONS: *On a mortgage.*
   To bar a proceeding to foreclose a mortgage, there must be an adverse holding for such a period as would bar an action of ejectment. The fact that the statute bar has attached to the debt secured by the mortgage will not affect a proceeding to foreclose.

2. — *Adverse holding in case of a mortgage.*
   There must be an open and notorious denial of the mortgagee's title, in order to constitute an adverse holding in favor of the mortgagor.

3. — *Decree on foreclosure where the debt is barred.*
   In a proceeding to foreclose, a court of equity will render a decree *in personam* against the mortgagor for any part of the debt remaining undischarged by the sale, notwithstanding the remedy thereon is barred.

4. MORTGAGE: *Partial release by a prior mortgagee, effect of.*
   If a mortgagee releases a part of the mortgaged premises, with actual knowledge that a subsequent mortgage has been executed on another part, he thereby discharges the latter *pro tanto*.

5. NOTICE: *Record of a subsequent mortgage.*
   The recording of a subsequent mortgage is not notice to a prior mortgagee as to rights vested under the prior mortgage.

6. USURY.
   Plea of, not permissible while the act of 1868 was in force.

7. DOWER: *Postponed to the vendor's claim for purchase money.*
   The widow of the vendee is not entitled, as against the vendor proceeding for the purchase money, to dower in land purchased during coverture.

APPEAL from *Sebastian* Circuit Court.

Hon. J. H. HUCKLEBERRY, Circuit Judge.

*Walker*, for appellant.

*Du Vall & Cravens, contra.*

HARRISON, J.   On the 25th of October, 1852, John Rogers sold and conveyed to William M. Bennett and Joseph J.

Walton, a lot of ground in the city of Fort Smith, for the purchase money of which they gave him their three bonds, each for $1,000, payable at different times—the last, two years thereafter; and to secure their payment, they executed to him a mortgage on the lot, in which the wife of said Walton, Martha E. Walton, joined with her husband, but did not relinquish dower, and the same was duly acknowledged and recorded. Bennett and Walton went into possession and occupied the premises until the stores built thereon by them were, in the .month of September, 1860, destroyed by fire, since which time they have been unoccupied and vacant.

On the 19th of January, 1855, Rogers assigned the bond which fell due on the 25th of October, 1854, together with the mortgage, to John H. T. Main, the appellee.

On the 1st day of November, 1858, Bennett sold and conveyed his interest in the lot to Walton.

Walton, on the 28th of February, 1859, gave a mortgage on the west half of the lot to George S. Birnie, as security for a bond for $5,000 payable on the 10th of February, 1860. Mrs. Walton joined also in this mortgage, and without relinquishing dower, and it was likewise duly acknowledged and recorded.

On the 10th of October, 1860, Walton gave Birnie another mortgage on the same half of the lot as a security for a note for $4,000, payable in two years. In this Mrs. Walton did not join, as in the other, but relinquished dower. It was also duly acknowledged and recorded. These debts due Birnie were reduced considerably by payments or credits which need not be particularly stated.

And on the 17th of October, 1860, Walton gave John Phelps a mortgage, in which his wife relinquished dower, on the same part of the lot to secure a note for $3,500, payable in two years, and which was also duly acknowledged and recorded.

Walton, the 8th of July, 1859, sold and conveyed the east half of the lot to Bennett, and the appellee, on the 25th day of November, 1867, released the same from the first mortgage.

Walton died in 1861, intestate, and no administration was had upon his estate until after the bringing of the suit.

The appellee brought this suit, which was commenced on the 11th day of September, 1869, for a foreclosure of the first mortgage against the entire lot, the bond held by him being the only one of those given for the purchase money remaining unpaid.

Bennett, Mrs. Walton the widow, and the heirs at law of Joseph J. Walton, Birnie, and Phelps, were made defendants.

After the suit was begun, William Y. Walton was appointed administrator of Joseph J. Walton, and was, upon his application, made a defendant.

The defendants, as defense to the plaintiff's complaint, relied on the statute of limitations and the release by him of the east half of the lot; and two of them, Mrs. Walton and William Y. Walton, also one of the heirs, averred and set up as a defense to so much of Birnie's counterclaim that the note for $4,000, secured by the mortgage of October 10, 1860, was given upon a usurious consideration.

The court decreed a foreclosure of all the mortgages against the west half of the lot, a sale thereof, and the payment of the mortgages in the order of their priority ; and the payment by Bennett of any balance there might be of the plaintiff's debt.

All the defendants except Bennett appealed.

That the remedy upon a bond, note, or simple contract for which a mortgage is given, is barred by the statute of limitations in no wise affects the right of the mortgagor to proceed in equity against the land mortgaged. To bar a suit for fore-

closure, there must be an adverse possession for such length of time as would bar an action of ejectment.

In this case no adverse holding or possession was alleged; on the contrary, it was admitted that the premises had been unoccupied since September, 1860. And though they may very properly be considered as all the time in the possession of the plaintiff, as there was no open and notorious denial of the mortgagee's title, their possession was his. *Harris v. King*, 16 Ark., 122; *Whiteside v. Jackson*, 1 Wend., 418; *Jackson v. Walker*, 7 Cow., 637; *Lingan v. Henderson*, 1 Bland, 236; *Moreton v. Harrison*, id., 491; *Driver v. Hudspeth*, 16 Ala., 348; *Relfe v. Relfe*, 34 id., 500; *Hunt v. Hunt*, 14 Pick., 374; *Newman v. Chapman*, 2 Rand., 93; 2 Wash. Real Prop., 158.

Nor will the statute, where the remedy on the debt is barred, preclude the court of equity in the suit for foreclosure from rendering a decree against the mortgagor for any remainder of the debt not discharged by the sale. In such case the decree *in personam* is but an incident to the decree of foreclosure; and when a court of equity once takes jurisdiction of a case, it will retain it for the purpose of complete relief. 1 Story Eq. Jur., 64 K.

As to the effect of the release, we find the doctrine to be that, when land is charged with a burden, the charge is as to every part equal, and one part ought not to bear more than its due proportion; but the right of a mortgagee or other incumbrancer to release a part from the charge is admitted, subject to the condition, however, that he does not thereby injure or impair the right of another. Therefore, if with the knowledge of a subsequent mortgage upon a part, he releases a different portion and throws an additional burthen on such part, he discharges *pro tanto* the part bound by the later mortgage. Every one is required so to deal with his own as to do no unnecessary injury to another. *Cheesebrough v. Millard*, 1 Johns.

Ch. 409; *Guion v. Knapp*, 6 Paige, 35; *Blair v. Ward*, 2 Stock., 119; 2 Smith's Lead. Cas., 272.

It is not shown or alleged that when the release was made, the plaintiff had notice of the other mortgages. It is admitted that they were duly recorded; but the authorities all agree that the recording of a subsequent mortgage is not notice to the prior mortgagee, and that a release by him of a part of the premises covered by his mortgage, but not by the other, will not have the effect to discharge the remaining parties of any part of the debt. *Taylor's Ex'rs v. Maris*, 5 Rawl., 51; *Stuyvesant v. Hona*, 1 Sandf. Ch., 419; *Blair v. Ward*, 2 Stock., 119; *George v. Wood*, Allen, 80; *Howard Ins. Co. v. Halsey*, 4 Seld., 271; *James v. Brown*, 11 Mich., 25; 2 Smith's Lead. Cas., 273.

The effect of recording a mortgage or other conveyance is not retrospective, or its object to affect rights already vested and secured, and a mortgagee, after having his deed recorded, is not required to search the record from time to time to see whether other incumbrances have been put upon the land, with which he is no wise concerned.

The doctrine we have mentioned is one of equity and not of positive law; and to bind the conscience of the mortgagee when dealing with his own property, he must have such notice or information as would make the act, in consequence thereof, inequitable and unjust.

The supreme court of Michigan, in the case of *James v. Brown*, above referred to, speaking upon this subject, says: "It is the duty of a subsequent mortgagee, if he intends to claim any rights through the first mortgage, or that may affect the rights of the mortgagee under it, to give the holder thereof notice of his mortgage, that the first mortgagee may act with his own understandingly. If he does not, and the first mortgagee does with his mortgage what is lawful for him to do,

before the second mortgage was given, without knowledge of its existence, the injury is the result of the second mortgagee's negligence in not giving notice. While the law requires every man to deal with his own so as not to injure another, it imposes a greater obligation on the other, to take care of his own property, than on a stranger to take care of it for him. And to make it the duty of the first mortgagee to inqure before he acts, lest he may injure some one, would reverse this rule, and make it his duty to do for the second mortgagee what the latter should do for himself."

The charge of usury against Birnie's second mortgage, though it seems to have been sustained by the evidence, was not available as a defense. When the suit was brought, and when as well, it was determined in the court below, the statute of 1868, which in words declared : " No plea of usury nor defense founded upon any allegation of usury shall be sustained in any court of this state," was in force.

This statute, as held in *Woodruff v. Scruggs*, 27 Ark., 26, which decision we approve, does not impair the obligation of the contract, but affects only the remedy, which the legislature may at pleasure change, and is mandatory.

Mrs. Walton was in no manner bound by the act of joining with her husband in the execution of the first two mortgages; her covenants by reason of her coverture being void ; but the mortgage the plaintiff sought to foreclose, being for the purchase money of the lot, which was purchased during her coverture, she was not entitled to dower against him ; sec. 2214, Gantt's Digest ; and having in the last two relinquished her dower, the foreclosure of them was likewise against that.