[Sac. No. 47.   Department Two.—April 13, 1896.]

MARY PORTER, EXECUTRIX, ETC., RESPONDENT, v. CHARLOTTE MULLER, ADMINISTRATRIX, ETC., ET AL., APPELLANTS.

MORTGAGES—EQUALITY OF COMMON BURDEN—TENANCY IN COMMON—INDIVIDUAL AND JOINT LIENS—DISCHARGE OF INDIVIDUAL LIEN—CONSTITUTION.—Equity requires equality in support of a common burden; and where the plaintiff in an action to foreclose a mortgage, executed jointly by two tenants in common, appears to have been also the holder of two individual mortgages executed to him by one of the cotenants upon his interest in the land, one of which was prior, and the other

subsequent, to the joint mortgage, and the interest of such cotenant was more than sufficient to satisfy the prior individual mortgage, the surplus value of such interest must be applied to the subsequent joint mortgage debt, for the payment of which the individual mortgagor was legally and equitably bound; and the plaintiff cannot, by accepting a conveyance from him in satisfaction and discharge of both of the individual mortgages, throw the whole burden of the joint mortgage upon the interest of the other tenant in common in the mortgaged land; but equity will preserve the equality of the common burden, by compelling the owner of each part to a just contribution, as if no discharge or purchase had taken place.

ID.—CONSENT OF COTENANT—VERBAL PROMISE—ASSUMPTION OF MORTGAGE LIEN—RECOGNITION OF OBLIGATION.—A mortgage lien cannot be changed or extended by a verbal promise; and the fact that the other cotenant verbally undertook and promised to pay the whole of the joint mortgage debt, can be of no effect to place any burden upon his interest in the land additional to that imposed upon it by the written terms of the mortgage; and the recognition of a greater obligation than that imposed by the note and mortgage could not have enlarged or changed the obligations created by it.

ID.—LAW OF THE CASE—DECISION UPON FORMER APPEAL.—The decision upon a former appeal, that an alleged oral agreement, even if proved and found as a fact, would have been of no effect, is to be deemed the law of the case on a second appeal, even though the decision of that question was not absolutely necessary on the first appeal.

ID.—ESTATES OF DECEASED PERSONS—PRESENTATION OF CLAIM—NOTE AND MORTGAGE—OMISSION OF ORAL CONTRACT.—Where a note and mortgage were presented as a claim against the estate of a deceased mortgagor, and an oral contract under which a claim is made against the estate of the deceased person was not presented to the administrator, nothing can be claimed under such oral agreement.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. ANSEL SMITH, Judge.

The facts are stated in the opinion.

*James H. & J. E. Budd,* for Appellants.

*E. S. Pillsbury,* for Respondent.

Porter had the right to apply the whole of Kroeckel's half of the land to the satisfaction of the two mortgages made on it by Kroeckel, and if they exhausted the whole of Kroeckel's interest, then he could go against the interest of Muller for the whole of the three thousand dollar mortgage; for when two or more persons unite in a mortgage of their several interests or parcels

of land, each of said interests or parcels is liable for the
whole debt.   (*Bell* v. *Walsh*, 7 Cal. 84; *Griffith* v. *Gro-
gan*, 12 Cal. 317, 324; *Armstrong* v. *Hayward*, 6 Cal. 183.)
Whatever the equities of the debtors may be as between
themselves, each is liable to the creditor for the whole
debt.   (*Dane* v. *Gorduan*, 24 Cal. 157; 85 Am. Dec. 53;
*Shriver* v. *Lovejoy*, 32 Cal. 574; *Damon* v. *Pardow*, 34 Cal.
278; *Chafoin* v. *Rich*, 77 Cal. 476; *Treweek* v. *Howard*,
105 Cal. 434; *Coffin* v. *Parker*, 127 N. Y. 117; *Sibley* v.
*Baker*, 23 Mich. 312; *Lumbermen's Ins. Co.* v. *Sprague*,
59 Minn. 208.)   As between the original parties, even
an express release of a part of the mortgaged premises
does not affect the mortgagee's lien upon the residue,
unless that was the intention of the parties.   (*Coutant*
v. *Servoss*, 3 Barb. 128; Jones on Mortgages, secs. 722,
981, 982: *George* v. *Wood*, 9 Allen, 80; 85 Am. Dec. 741;
*Patty* v. *Pease*, 8 Paige, 277, 284; 35 Am. Dec. 683; *Ken-
dall* v. *Woodruff*, 87 N. Y. 1; *Libby* v. *Tufts*, 121 N. Y.
172; *Hawhe* v. *Snydaker*, 86 Ill. 197; *Williams* v. *Wil-
son*, 124 Mass. 257; *Watson* v. *Grand Rapids etc. R. R. Co.*,
91 Mich. 198; *Moore* v. *Smith*, 95 Mich. 71; *Trustees of
Brookhaven* v. *Smith*, 118 N. Y. 634.)

VANCLIEF, C.—This action was commenced Septem-
ber 15, 1877, by David Porter against Christian Muller
to foreclose a mortgage executed by Christian Muller
and George Kroeckel on two adjoining quarter sections
of land, of which they were equal owners as tenants in
common, to wit, the northwest quarter of section 28, and
the northeast quarter of section 29, township 2 north,
range 8 east, Mount Diablo meridian, to secure their
joint debt of $3,000 and interest.   Upon the death
of each original party, pending the action, his legal
representative was substituted.   The case has been
before this court on two former appeals, in each of
which a judgment in favor of plaintiff was reversed.
(*Porter* v. *Muller*, 53 Cal. 677; 65 Cal. 512.)   The record
on the present appeal presents the following undisputed
facts:

Muller and Kroeckel had purchased the land above described from G. H. Tarr, for the price of $8,000, paying one-half in cash, and executing their mortgage to Tarr to secure the balance of $4,000.

Thereafter, February 28, 1874, Kroeckel mortgaged his undivided half of the land to David Porter (plaintiff) to secure his individual indebtedness to Porter in the sum of $4,000, and interest to accrue thereon at the rate of ten per cent per annum, payable quarter-yearly.

On September 2, 1875, Muller and Kroeckel, having paid $1,000 and all interest on their mortgage debt to Tarr, borrowed $3,000 from Porter, and paid the same to Tarr, in full satisfaction of their mortgage to him; and, at the same time, to secure Porter for said loan, made their joint note to him for $3,000, payable two years after date, with interest at the rate of one per cent per month, and to secure this note executed the mortgage in suit.

Thereafter, on July 13, 1876, Kroeckel again mortgaged his undivided interest in the land to Porter, to secure his individual debt to the latter in the sum of $1,404.25, this debt being additional to his debt of $4,000, secured by said mortgage of February 28, 1874.

On September 30, 1876, Porter commenced an action against Kroeckel to foreclose the $4,000 mortgage of February 28, 1874, on Kroeckel's undivided half of the land. While the last-mentioned action was pending, to wit, on November 9, 1876, a compromise agreement was made between Porter and Kroeckel to the effect that Kroeckel should convey to Porter all right, title, and interest of the former in and to the two quarter sections above described; that in consideration of such conveyance Porter should release and discharge the $4,000 mortgage and debt (which debt, with interest, then amounted to $4,080) and dismiss the action to foreclose that mortgage at his own costs, and should also release and discharge the subsequent mortgage of July 13, 1876, and the debt of $1,404.25 thereby secured. This agreement was then (November 9, 1876) completely executed by

both parties thereto. At that time Kroeckel was con-
sidered insolvent, and the court found that he died in
August, 1877, leaving no estate, real or personal.

Thereafter, on December 15, 1876, Porter, by deed,
granted to Hiram H. Jones the undivided half of said
land which had been conveyed to the former by Kroeck-
el as aforesaid, the deed to Jones reciting a consider-
ation of $5,600, and containing a covenant on the part
of Porter that the land conveyed should be forever free
from the lien of the $3,000 mortgage of September 2,
1875, executed to Porter by Muller and Kroeckel as
aforesaid. It is admitted by respondent that the con-
sideration paid by Jones to Porter was $5,600 as recited
in the deed, whereas appellant contends that it was
$5,700.

On April 7, 1887, Muller and Jones partitioned said
land, by making conveyances to each other, the effect of
which was to give the quarter of section 28 to Jones,
and quarter of section 29 to Muller. Since the com-
mencement of this action Jones conveyed the quarter
of section 28 to the defendant, Charles Grupe.

The object of this action is to enforce the $3,000
mortgage of September 2, 1875, executed by Muller and
Kroeckel on both quarter sections, against the interest
of Muller alone, as changed by said partition, to wit,
against the northeast quarter of section 29; and also to
obtain a judgment against Muller's administratrix alone,
for any deficiency after application of the proceeds of
the sale of said northeast quarter of section 29.

Fifteen days before the action was commenced, to wit,
on August 31, 1877, Muller tendered to plaintiff, Porter,
$1,680, that being one-half of the amount then due for
principal and interest on the mortgage note, as full pay-
ment of the proportion which he (Muller) was liable to
pay, and kept the tender good. Plaintiff then refused
to accept the tender as full payment, but afterward, on
October 5, 1878, accepted it as a credit on the mortgage
debt.

Jones, who purchased from Porter the Kroeckel inter-

est in the land, and Grupe, who purchased the quarter
of section 28 from Jones, were made parties defendant,
but both failed to answer, and their defaults were en-
tered.

On July 14, 1884, Muller conveyed the northeast
quarter of section 29 to his wife, Charlotte Muller. She
was, therefore, made a party defendant individually as
well as in her character of administratrix; and in both
capacities she answered plaintiff's complaint, and also
filed a cross-complaint with the object of clearing her
title to the northeast quarter of section 29 from the
cloud cast upon it by the mortgage in suit. The cross-
complaint was answered by plaintiff, though the facts
therein alleged, so far as material, were legitimate
matters of defense.

The court found the facts herein above stated, with
others claimed by respondent to be material (which will
be considered hereafter), and therefrom deduced the fol-
lowing conclusions of law:

"As conclusions of law from the foregoing facts, the
court finds that the plaintiff is entitled to have and re-
cover from the defendant Charlotte Muller, as adminis-
tratrix of the estate of Christian Muller, deceased, the
amount due and unpaid upon the note mentioned in
finding V, to wit: For the principal sum of three thous-
and dollars ($3,000.00), with interest thereon from the
2d day of September, A. D. 1876, at the rate of one per
cent per month, less a credit of the sum of sixteen hun-
dred and eighty dollars ($1,680.00), as paid October 5,
1878, said principal and interest to be paid in gold coin
of the United States, together with the plaintiff's costs
of this action, and the sum of three hundred dollars
($300 00), in like gold coin, as her attorney's fee; and
that the mortgage mentioned in finding V is a lien upon
the northeast quarter of section twenty-nine (29), town-
ship two (2) north, range eight (8) east, Mount Diablo
meridian, to secure the payment of the said amounts
found to be due to the plaintiff; and that the plaintiff
is entitled to have the said mortgage foreclosed, and the

said northeast quarter of the said section twenty-nine
(29) sold by an officer of this court, and the proceeds
applied in paying the said amounts found due to the
plaintiff."

The judgment is in strict accordance with the con-
clusions of law, being a judgment against Charlotte
Muller as administratrix of the estate of Christian
Muller, deceased, for the sum of $6,599.58 in gold coin,
to be paid in due course of administration, to which is
added an order and decree that the northeast quarter of
section 29, township 2 north, range 8 east, Mount Diablo
meridian, be sold, and that from the proceeds of the
sale, less the costs and expenses thereof, the sheriff "pay
to plaintiff or her attorney the sum of $6.599.58 in gold
coin of the United States (that being the amount of said
judgment), with interest thereon at the rate of seven per
cent per annum from the date of this decree, or so much
thereof as the said proceeds of sale will pay."

The defendant, Charlotte Muller, as administratrix,
and individually, appeals from the judgment and from
an order denying her motion for a new trial.

On the facts thus far stated it seems clear that the
judgment is erroneous.

Plaintiff's $4,000 mortgage of February 28, 1874, was
the prior lien on Kroeckel's interest, and, if necessary,
might have exhausted that interest and thereby have
thrown the whole burden of the $3,000 mortgage of
September 2, 1875, upon Muller's half of the land; but
if the value of Kroeckel's half of the land was more than
sufficient to satisfy his prior individual mortgage thereon,
then the surplus should have been applied to the subse-
quent joint mortgage of Kroeckel and Muller, to the
extent of one-half of the joint mortgage debt for the
payment of which Kroeckel was legally and equitably
bound, unless such application of the surplus could not
have been made consistently with the rights of plaintiff.
"Equity requires equality in support of a common bur-
den"; and, as between Kroeckel and Muller, their joint
mortgage to plaintiff was a common and equal burden,

the equality of which the plaintiff, having notice thereof, was not at liberty to disregard or disturb as he did by discharging that mortgage as to Kroeckel's half of the mortgaged land, and attempting to enforce it against Muller's half alone, when he necessarily had notice of the mutual rights and equities of Kroeckel and Muller. (*Stevens* v. *Cooper*, 1 Johns. Ch. 425; 7 Am. Dec. 499; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 415; 7 Am. Dec. 494; *Parkman* v. *Welch*, 19 Pick. 238; *Ingalls* v. *Morgan*, 10 N. Y. 188; *Denman* v. *Prince*, 40 Barb. 217; *Stuyvesant* v. *Hone*, 1 Sand. Ch. 129; *Birnie* v. *Main*, 29 Ark. 591; *Webb* v. *Meloy*, 32 Wis. 319.) In *Stevens* v. *Cooper*, *supra*, Chancellor Kent said:

" 2. The next and only remaining point in this case is, whether the release by the mortgagee, on the 24th of October, 1797, of four of the lots included in the mortgage, does not, in equity, ratably reduce the power of the mortgage upon the remaining lots, inasmuch as it deprives the owners of those lots of their right of contribution as against the lots so released.

" It is a doctrine well established that, when land is charged with a burden, the charge ought to be equal, and one part ought not to bear more than its due proportion; and equity will preserve this equality by compelling the owner of each part to a just contribution. (*Sir Wm. Harbert's case*, 3 Coke, 14; *Harris* v. *Ingledew*, 3 P. Wms. 98, 99.) I need not go at large into this doctrine. It is perfectly well understood; and I had occasion recently to examine it in the case of *Cheesebrough* v. *Van Schaick*. The court will likewise compel the creditor to aid this right of contribution by assigning his bonds and securities to the debtor, or surety, or owner of the land, whom he charges with his whole demand, and they will not permit him, voluntarily, to defeat this right. He owes a duty to his debtors not to impair their rights as against each other. But here the mortgagee has deprived the owners of lot No. 72 and 82 of this recourse, by previously discharging the other lots; and he ought not then, in equity, to charge them

with a greater burden than they would have been subject to upon the principle of contribution, if no such discharge had taken place. This is a clear and fundamental rule of justice, which must strike at once every discerning mind, and which Pothier has illustrated in his Treatise on Obligations, a work which is founded in sound ethics as well as upon the basis of the civil law. (Traite des Oblig., No. 275, 520.)"

In *Webb* v. *Meloy, supra,* the defendant, being prior mortgagee, purchased the mortgagor's title or equity of redemption, for which he paid $125, and also paid two years' back taxes. Four months thereafter he conveyed the mortgaged premises to Blain for a sum sufficient to satisfy his prior mortgages, repay the sums he had paid for the equity of redemption and for taxes, and also to satisfy plaintiff's subsequent mortgage to foreclose which the suit was brought. The lower court decreed a foreclosure of plaintiff's subsequent mortgage and ordered that it be first satisfied from the proceeds of the foreclosure sale, and the supreme court affirmed the judgment, saying, among other things: "What difference can it make that, instead of foreclosing, Meloy purchased the equity of redemption, and then sold the premises at private sale for a sum sufficient to pay off and discharge all of the encumbrances? We can perceive no difference in principle in the two methods, and we think that the circuit judge held correctly that equity will, under the circumstances of this case, regard the sale to Blain for $2,025 as equivalent to the sale of the premises for the same sum on a foreclosure of the prior mortgages. This principle seems so manifestly just and equitable that argument is scarcely needed in support of it. . . . . The substance of the whole matter is that Meloy has received money (or its equivalent) which equitably he ought to apply in payment of plaintiff's mortgage." The substance of the whole matter in the case at bar is that Porter has received money (about $1,500), in excess of what was due him on his prior

$4,000 mortgage, which excess he ought to have applied as a payment by Kroeckel on the mortgage in suit.

That excess is admitted to have been received by him on the fifteenth day of December, 1876, nine months before this action was commenced, and should be credited on the subsequent joint mortgage of Kroeckel and Muller (the mortgage in suit) not later than that date. If, however, the land purchased by Porter from Kroeckel was of greater or less value than $5,600, the credit should be correspondingly increased or diminished. (*Cheesebrough* v. *Millard, supra.*) But according to the case of *Webb* v. *Meloy, supra,* the credit, in the absence of proof of greater or less value, should equal the price actually paid to plaintiff by Jones. The pleadings raise an issue as to the value of Kroeckel's half of the mortgaged premises, and there was considerable evidence applicable to that issue, but no finding upon it by the court.

I do not understand that counsel for respondent controverts either the facts or the law as above stated; but he claims that the court below found material additional facts, which, together with those above stated, support and justify the judgment.

The only additional findings, upon which it is claimed that the judgment may stand, are, in substance, that at the time of the compromise agreement between Porter and Kroeckel (November 9, 1876) Muller consented thereto and then verbally "undertook and promised, in consideration of the benefit he was to receive by and under the said mutual arrangement, *and in recognition of his duty and legal obligation in the premises,* that he would himself pay the whole of the note mentioned in finding 5 (joint mortgage note of Kroeckel and Muller), and that his undivided one-half of the said land should stand security for the payment of the whole of the said note"; that Porter, though at first unwilling to make the compromise with Kroeckel, "finally consented to accept such a deed [from Kroeckel] and dismiss the said foreclosure proceedings [on Kroeckel's $4,000 mortgage]

only because he relied upon the said representations of Muller; that his [Porter's] rights under the note and mortgage mentioned in finding 5 would not, and should not, be affected or prejudiced by his accepting such a deed from Kroeckel, and that the said Muller would himself be bound to pay the same in full"; and that, but for such representations and promises of Muller, "Porter would not have dismissed the said foreclosure proceedings, but would have prosecuted the same to a final judgment and decree, and would have caused the interest of said Kroeckel in said tract of land to be sold thereunder, and the proceeds applied in satisfaction of said individual indebtedness of said Kroeckel."

Though the findings cover twenty pages of the printed transcript, a comparison of the foregoing with the findings contained in the transcript on the last former appeal will show all that is materially peculiar to the findings on this appeal, or, in other words, all that is materially different from those on the last former appeal; and the only substantial difference is that on the present appeal it is found that "in consideration of the benefit he was to receive by and under the said mutual arrangement, *and in recognition of his duty and legal obligation* in the premises," Muller verbally undertook and promised that he would pay the whole of said note; whereas the ultimate fact of such undertaking or promise was not expressed, and was held not to be implied, in the findings on the former appeal. (See *Porter* v. *Muller,* 65 Cal. 516.)   In all other respects the findings on this appeal relating to the oral agreement are substantially the same as they were on the former appeal.

On the former appeal it was, in effect, decided that the legal effect of the mortgage of Muller and Kroeckel to Porter was not, and could not have been, changed to the prejudice of Muller by any merely oral agreement between Muller and Porter.  On the second former appeal it was contended by respondent that the findings on that appeal were to the effect that Muller had assumed and agreed to pay the whole mortgage debt;

but the court, after concluding that the findings could not be so construed, added: " If he had expressly agreed orally that his cotenant's share of the land should be relieved of the mortgage, and that his own should bear the whole burden, such oral agreement would have been of no effect" (citing Civ. Code, sec. 2922); that is to say, at least, that such agreement could not have had the effect to place upon Muller's share of the mortgaged land any burden additional to that imposed upon it by the written terms of the mortgage. As the oral agreement was pleaded and claimed to have been proved and found as a fact, the question of law as to its legal effect, as well as the question as to whether it had been found as a fact by the court, was properly presented for decision; and the court having concluded that the agreement had not been found as an ultimate fact, and that a new trial should be granted, it decided the question of law as to the legal effect of the agreement, for the guidance of the lower court on the new trial, thereby preventing the necessity of another appeal to settle that question. Therefore, the decision that the alleged oral agreement, even if proved and found as a fact, "would have been of no effect," is to be deemed the law of the case on this appeal, even though the decision of that question was not absolutely necessary on the former appeal. (*Table etc. Co.* v. *Stranahan*, 21 Cal. 549; *Leese* v. *Clark*, 20 Cal. 388; *Gwinn* v. *Hamilton*, 75 Cal. 265.)

Furthermore, it is not at all clear that the oral promise or agreement, as found on the last trial, purports to add anything to the pre-existing " legal obligation," "in recognition" of which it is found to have been made. His recognition of a greater obligation than that imposed by the note and mortgage could not have enlarged or changed the obligations created by those instruments. As said by this court on the former appeal: " If he was informed and understood that he would become liable for the whole $3,000 note, as the consequence of facts from which no such liability arose, such information and understanding did not make him liable." Besides,

if Muller received any benefit "by and under said arrangement" (between Porter and Kroeckel) not necessarily and merely incidental thereto, or from his lease from Porter, and in consideration of such benefit he orally promised to do or pay anything which the note and mortgage did not oblige him to do or pay, any obligation thereby created was entirely distinct from those arising from the note and mortgage, and, being merely oral, could not have been secured by the mortgage; and, so far as the ground of such additional obligation is alleged in the complaint, it is therein stated as a distinct promise of Muller, made in consideration that Porter should pay the taxes on his own half of the land purchased by him from Kroeckel, for the then current year, and should lease his said half of the land to Muller during the ensuing cropping season, at the rental of one-fourth of the crop. But it is not clearly apparent that Muller received any benefit or that Porter suffered any detriment from "said arrangement," lease, or payment of taxes, which can be deemed a valuable consideration for Muller's distinct, oral promise to pay the whole debt; since Porter was bound to pay the taxes on his undivided half of the land, and the stated terms of the lease imposed upon Muller no other obligation than to pay the stipulated rent.

Again, it is not alleged, and does not appear, that any claim on this distinct oral agreement was ever presented for allowance to the administratrix of Muller's estate, although it is alleged in the amended supplemental complaint that the plaintiff's claim, founded on the note and mortgage, was, in due form, so presented on July 6, 1886, and is further alleged "that the said claim so presented arose and was founded upon the contract, to wit, the *note and mortgage* set forth in plaintiff's original complaint herein."

On this branch of the case my conclusion is, that the alleged oral agreement does not change nor affect the rights of the parties in this action, and should be excluded from consideration as a factor in the case.

I think the judgment and order should be reversed, and the cause remanded for a new trial on the following issues only: 1. As to the value of Kroeckel's undivided half of the mortgaged premises on the ninth day of November, 1876, when plaintiff purchased that half; 2. As to the amount of costs paid by plaintiff on his dismissal of his action against Kroeckel to foreclose the prior $4,000 mortgage; 3. As to the amount of taxes paid by plaintiff on Kroeckel's half of the land after his purchase thereof, which were a lien upon the land at the time of the purchase; 4. As to the amount of principal and interest due and unpaid on the prior $4,000 mortgage on November 9, 1876. These being found, the sum of the last three, namely, said costs, taxes, and amount of principal and interest due on the $4,000 mortgage, should be subtracted from the value (as found) of Kroeckel's half of the land on November 9, 1876, and the remainder of such value, if any, to the extent of one-half of the mortgage debt, should be credited on the mortgage note in suit, as of November 9, 1876. The $1,680 tendered by Muller on August 31, 1877, and afterward accepted by plaintiff, should be credited on the note in suit as of the date of such tender. If, after allowing these two credits, there shall be found any unpaid balance due plaintiff on the note and mortgage in suit, he will be entitled to a judgment of foreclosure for such unpaid balance, and no more.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the order and judgment appealed from are reversed, and the cause is remanded for a new trial in accordance with and as limited in said opinion.

MCFARLAND, J., TEMPLE, J., HENSHAW, J.

Hearing in Bank denied.