[Sac. No. 1176.    Department One.—September 24, 1904.]

# CONTINENTAL BUILDING AND LOAN ASSOCIATION, Respondent, v. CHARLES L. WILSON and NELLIE WILSON, Appellants.

EJECTMENT—ANSWER—CROSS-COMPLAINT—GENERAL FINDINGS—UNCONTROVERTED FACTS.—General findings in an action of ejectment that all of the allegations of the complaint are true, except as to the amount of damages, that all of the allegations of the answer and cross-complaint of the defendants are untrue, and all of the allegations of the answer to the cross-complaint are true, are not objectionable on the ground of admissions in the answer to the cross-complaint of uncontroverted facts stated therein.

ID.—VALIDITY OF SALE UNDER DEEDS OF TRUST—CONFLICTING EVIDENCE—SUPPORT OF FINDINGS—DEFAULT OF TRUSTORS.—Where the matters contested in the defendants' answer and cross-complaint, and in the answer of the plaintiff thereto, related to the validity of a sale to the plaintiff under several deeds of trust executed by the defendants, where the evidence on controverted matters was conflicting, but there was sufficient evidence to show the default of the trustors and the validity of the sale, the findings in favor of the plaintiff are sufficiently supported.

ID.—PAYMENT OF ENCUMBRANCES—ADVANCES BY TRUSTEE—DISTRIBUTION OF SECURITIES—VERBAL AGREEMENT—STATUTE OF FRAUDS.—Where the several deeds of trust, to raise funds for building, provided that the trustors should pay and discharge all liens as a condition precedent to the furnishing of the money, and provided that upon their failure to remove any encumbrances the trustee might pay and discharge them and hold the amount as security under the deeds, and also provided for security for further loans under each deed in a limited amount, and advances were made by the trustee of an aggregate sum to pay off all loans at the verbal request of the trustors, and under a verbal agreement that the security for the amount advanced should be distributed proportionately under the several deeds of trust, which was done, such verbal agreement does not render the lien for advances invalid under the statute of frauds, nor under the provisions of the code as to creating or renewing a mortgage.

ID.—SEPARATE PROPERTY OF WIFE—VERBAL AUTHORITY TO HUSBAND—ESTOPPEL OF WIFE.—Where the deeds of trust were executed by husband and wife upon her separate property, the wife, after signing the deeds and taking part personally in placing the matter of the encumbrances in the hands of the trustee, and having received the benefit of the payment thereof by the trustee, cannot

be heard to say that she did not authorize her husband in writing to make the agreement, nor to say that the advances so distributed were not secured by the deeds of trust.

Id.—Lien not Waived by Plaintiff.—The plaintiff is not deprived of the benefit of the provisions of the deeds of trust on the ground that he claimed in his answer that, under a verbal contract with the defendant husband, acting for himself and wife, the aggregate sum of advances was to be distributed among all the deeds of trust within the limit for advances fixed by each. There was no waiver by plaintiff of its lien under the deeds of trust, and the agreement was in harmony with their provisions, and the apportionment agreed upon was favorable to the defendants.

Id.—Immaterial Omissions in Findings—Deeds of Trust not Involved.—Where the action of ejectment and the material issues raised therein related to four several deeds of trust upon the lots sued for, and the court found upon all of the material issues and against an agreement relating to all of the deeds of trust set up as a defense, the court was not called upon to find upon or dispose of other notes and deeds of trust not otherwise involved in the action further than was done by the court in adjudging that defendants take nothing by their cross-complaint, and that plaintiff have judgment for possession of the premises sued for.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion.

Webb & Creed, Parcells & Brown, and F. P. Tuttle, for Appellants.

L. L. Chamberlain, and Charles Tuttle, for Respondent.

CHIPMAN, C.—Ejectment. The verified complaint alleges ownership and right of possession of certain lots (describing them) in the city of Lincoln, Placer County; that defendants have excluded, and do now exclude, plaintiff from possession, to plaintiff's damage in the sum of one thousand dollars. Defendants answered denying plaintiff's ownership and right of possession; also answered by way of "a second and further defense," and also "by way of cross-complaint." Plaintiff answered the cross-complaint, and at the trial the court found that all the allegations of the complaint are true, except as to damages; that all the allegations of the answer

are untrue; that all the allegations of the cross-complaint are untrue; and that all the allegations of the answer to the cross-complaint are true. As conclusion of law, the court found the plaintiff entitled to the relief asked for in the complaint, "and for damages, which are fixed as $780." Judgment was accordingly entered, from which and from an order denying their motion for a new trial defendants appeal.

There are certain admitted facts found by the court which may be first stated: On July 16, 1900, defendants executed sixteen different deeds of trust to secure the payment of certain sixteen promissory notes also executed and delivered by them to plaintiff, each for $1,950; each deed of trust conveyed certain four lots in the city of Lincoln; the money borrowed on each note was to be used in constructing a dwelling on the group of lots conveyed by the deed of trust given to secure said notes; the notes were in the form usual with building and loan associations and showed that defendants pledged certain shares of the capital stock of plaintiff company for which they had subscribed as further security, and agreed to pay for said shares the principal and certain interest and premiums on the shares and interest on the loan monthly, in default of which plaintiff had the right to treat the notes as immediately due and payable; the deed of trust by its terms was to secure "all amounts of principal hereafter borrowed by said grantors . . . not exceeding at any one time $450"; grantors agreed to pay any encumbrances (and some other charges named) there might be then upon the premises, or that might be thereafter imposed thereon as taxes, etc., in default of which plaintiff was authorized to pay the same, and the deed of trust was to be security therefor. Four dwellings were erected with money furnished by plaintiff, and defendants having defaulted, as was claimed by plaintiff, in making certain payments stipulated for in these four promissory notes and deeds of trust, the property was sold by the trustees and deeds therefor made to plaintiff, and these deeds are the source of title relied on by plaintiff.

The controversy arises out of some disputed points in what constituted the agreement made by the parties contemporaneously with the execution of the notes and deeds of trust and subsequently thereto touching the construction of the

building and the furnishing of money therefor by plaintiff. The pleadings on this phase of the case are very lengthy, embracing about seventy pages of the transcript. The agreement as set forth in defendants' answer and cross-complaint differs materially from that contained in that portion of plaintiff's answer "by way of affirmative defense to the matters and things alleged in the cross-complaint of defendants" and as found by the court. The evidence is sharply conflicting on controverted points, but there is evidence sufficient to support the finding that the allegations of plaintiff's answer to defendants' cross-complaint are true. Stated as concisely as may be, there was evidence that the transaction was as follows: Defendants are husband and wife, and, being desirous of erecting dwelling-houses on certain lots in Lincoln, defendant Charles Wilson (who seems to have conducted all the negotiations for himself and wife, either personally or through their broker, one Krigbaum) applied to plaintiff for a loan of $31,200, that being the estimated cost of sixteen dwellings at $1,950 each; after much negotiation plaintiff agreed to make the loan, with the understanding that sufficient money would be furnished to pay for four houses when completed, but that no more money would be furnished until these houses had been either sold and this money repaid or the property sold to parties upon part payment, balance secured by mortgages, satisfactory to plaintiff, defendants meanwhile to pay the monthly interest and other charges in accordance with the form of note prescribed by plaintiff, defendants also representing title clear, and if not clear, they were to make it so. Sixteen separate notes and deeds of trust were executed and at once recorded, although no money was to be then paid over, the purpose of recording all the deeds being to make subordinate any subsequent liens upon the lots; and abstract of title was subsequently furnished by defendants which disclosed several liens on the property which defendant Charles Wilson represented could and would be removed for four thousand dollars; further proceedings were thereupon suspended, and plaintiff refused to go forward with the business unless defendants would cause these prior liens to be discharged. Later along defendant Charles Wilson represented that defendants had made all possible effort to raise the money without success, and appealed to plaintiff

to advance it, which plaintiff finally consented to do, and thereupon paid off these lienholders, furnishing four thousand dollars therefor to defendants, under an agreement with Wilson, acting for himself and wife, that this sum should be secured by the deeds of trust by apportioning two hundred and fifty dollars to each group of four lots covered by a deed of trust, and this advance was to be treated as part of the fund to be furnished in building the houses, and any shortage of money required for that purpose was to be furnished by defendants. This arrangement was conditional to furnishing any money for the construction of any of the buildings, and the four thousand dollars was paid to the Union Trust Company of San Francisco on August 15, 1900, about one month after the deeds of trust had been executed and recorded, the various documents affecting releases having been placed there in escrow by the arrangement of Wilson and wife. These documents show that they represented judgments, mortgages, or pending actions encumbering the property, and in which Mrs. Wilson and her husband were debtor parties. Witness Corbin testified that no interest was to be charged or was charged, except on money actually advanced; that Wilson represented that each building and its lots would sell for three thousand dollars, which would pay the loan and leave defendants five hundred or six hundred dollars or more profit; that Wilson represented himself to be worth twenty-five thousand to fifty thousand dollars; that the whole amount due plaintiff July 15, 1901, on these four houses, excluding the four thousand dollars advanced to remove encumbrances, was $8,525.36. This sum is made up of various items, some or all of which are enumerated by witness Corbin, and he testified that he "furnished Wilson a segregated statement of each building, showing the amount due on each building." He further testified: "We did not go on and build four more buildings because Wilson did not comply with his portion of the agreement to put money into the buildings himself; he did not pay any attorney's fees and paid nothing on the insurance policies, paid nothing for recording fees, paid no installment of interest and premium, and did not sell the houses. He did not pay us a five-cent piece from the time we entered into the original contract with him up to the closing of that contract." Corbin's testimony as to the agreement is corrobo-

rated by that of witness Krigbaum, defendants' agent, witness Harding, a director of plaintiff's corporation, witness J. L. Wilson, a contractor, and witness Armitage.

1. It is urged that because the pleadings of plaintiff admitted some of the allegations of defendants' answer the *omnibus* finding that all the allegations of defendants' answer are untrue is against the findings and evidence, and brings the finding within the rule of *Krug* v. *Lux, etc. Brewing Co.,* 129 Cal. 322. In other words, that the finding in effect is "that all the allegations of the answer, so far as they are inconsistent with the allegations of the complaint, and all the allegations of the cross-complaint, so far as they are inconsistent with the answer thereto, are not true,"—a form of finding condemned in the case cited. We do not think that the admissions in plaintiff's pleadings pointed out in defendants' brief lead to the result suggested. The first is at folios 142-143, where the agreement to loan defendants $31,200 is admitted. But the answer "denies that the same was to be paid either in the manner or at the times in the said cross-complaint mentioned," and the answer proceeds to set forth what the agreement was. There is no controversy as to the amount which plaintiff agreed to loan, but rather upon the terms upon which it was to be furnished from time to time. The other admission is at folio 154, and admits the matters contained in paragraph V of the cross-complaint, which sets forth the execution of the notes and deeds of trust, about which there is no controversy. The admission is followed by the averment that "they were delivered to plaintiff by defendant and plaintiff accepted the same on. the terms and conditions hereinafter mentioned; but plaintiff denies that it accepted the said promissory notes or deeds of trust except upon the terms hereinafter stated." The findings present no such difficulty as they did in *Krug* v. *Lux etc. Brewing Co.,* 129 Cal. 322.

2. It is contended that the sale under the deeds of trust was premature and void, for the reason that defendants were not in default at the time of said sale. It is claimed that the four loans aggregated $7,800 ($1,950 each), and that but $7,515 was paid for the four houses: that plaintiff, therefore, had sufficient money on hand under the loan to pay all dues, premiums, and interest, and it was plaintiff's duty to apply

it to these charges. (Citing Civ. Code, sec. 1479; *Monroe* v. *Fohl,* 72 Cal. 568; *Bank* v. *Theim,* 28 N. Y. 232.) Conceding that defendants were entitled to have any money applied standing to their credit on the loans, the difference between $7,800 and $7,515 would be but $285, while the evidence shows that the dues, premiums, and interest due August 28, 1900, on advances made to that time, amounted to $327.60, and on December 5, 1900, like charges amounted to $218.14, not to speak of advances in addition to the contract price on the buildings.

3. It is contended that the lien attempted to be created by the advancement of the four thousand dollars, distributed among the sixteen loans, was invalid because contrary to the statute of frauds. With this may be considered the further point,—namely, that in no event could this advancement operate as a lien upon Mrs. Wilson's property without her consent thereto expressed in writing, and her husband had no authority in writing to charge her as agent and as required by section 1971 of the Code of Civil Procedure. The agreement was, that the money loaned was to be used in the construction of certain houses; each of the deeds of trust provided for advances, beyond the principal amount to be loaned, for which the property was made security; after the deeds were executed it was found, as above shown, that certain encumbrances rested on the property, placed there by defendants, which they agreed should be removed before any money was paid on the loan. Defendants found themselves unable to do this, and plaintiff advanced the money necessary for the purpose. Mrs. Wilson must be charged with notice of the negotiations, for she signed papers that were placed in escrow to effect the release of the property, and the discharge of these liens inured to her benefit as well as that of her husband. Besides, the deeds of trust expressly provided that defendants should pay "all encumbrances now subsisting or which may hereafter subsist," etc., on the granted premises, in default of which the trustees "may at such time as they deem best, . . . pay and discharge all . . . liens and encumbrances, . . . and these trusts shall continue as security . . . for all money laid out and expended by virtue hereof." In addition to these general provisions, in each deed of trust there was also one covering "all amounts hereafter borrowed by said grantors

from said association during the continuance of these trusts, not exceeding at any one time four hundred and fifty dollars.''

Mrs. Wilson having signed the deeds of trust, and having taken part personally in placing the matter of the encumbrances in the hands of the trust company to be paid, and having received the benefit of that payment, cannot be heard now to say that she did not authorize it in writing. The clearing off of these encumbrances was made a condition precedent to furnishing any money for the buildings. Mrs. Wilson will not now be permitted to say that these advances were not secured by the deeds of trust. This view is in no sense inconsistent with the doctrine of the cases cited by defendants (*Porter* v. *Muller,* 53 Cal. 677, s. c. 112 Cal. 355), or the provisions of the code as to creating or renewing a mortgage. (Civ. Code, secs. 2922, 2924.) Nor is plaintiff deprived of the benefit of the provisions of the deeds of trust because plaintiff claimed in its answer under a verbal contract with Wilson, acting for himself and wife, that the four thousand dollars advances were to be distributed among all the deeds of trust, two hundred and fifty dollars to each. There was no waiver by plaintiff of its lien under the deeds of trust, and the agreement was in harmony with their provisions. Each of the four deeds of trust authorized an advance of four hundred and fifty dollars at one time, and the agreement to apportion two hundred and fifty dollars to each deed of trust was more favorable to defendants than the deeds themselves.

4. Finally, it is claimed that the court failed to find upon material issues presented by the pleadings. There are no material issues except such as arise out of the agreement already referred to. One of the principal issues presented by defendants' answer and cross-complaint was, that plaintiff agreed to loan the entire sum of $31,500, and that upon the completion of the four buildings there remained in plaintiff's hands which belonged to defendants the difference between that amount and $7,515, advanced for these four buildings, or $23,685; that plaintiff by its agreement was to proceed with four other buildings on the completion of these four, and so to the completion of all; that plaintiff refused to furnish any ·further money, by reason of which defendants were prevented from performance on their part. These and other averments

of defendants' answer and cross-complaint were traversed by plaintiff in its answer.

The court found that all the allegations of the defendants' answer and cross-complaint were untrue, and all the allegations of plaintiff's answer thereto were true. It seems to us that every material issue arising under the pleadings was thus disposed of. Defendants' allegations having no foundation in fact to rest upon as affecting the deeds of trust other than the four under which plaintiff was claiming, the court was not called upon to make any disposition of these other notes and deeds of trust. Plaintiff claimed nothing under them, and answered as to them, to meet the claim of defendants, that plaintiff failed to advance the money it had agreed to advance, and to show that the sale under the trust-deeds was not premature. The issue presented by plaintiff was its title and right of possession to the sixteen lots in question, and no others. Defendants having failed to maintain their defense arising out of their alleged agreement as to the entire transaction, there remained no right of the respective parties as to these outstanding notes and deeds of trust to be deter-mined further than was done by the court in its judgment, "that defendants are not entitled to recover anything from plaintiff by their cross-complaint on file herein, and that defendants take nothing by the same."

We advise that the judgment and order be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

Shaw, J., Van Dyke, J., Angellotti, J.

Hearing in Bank denied.