[Civ. No. 6564. First Appellate District, Division Two.—December 6, 1928.]

MARION J. MAZURAN, Appellant, v. FRANK STEFA-NICH et al., Respondents.

D. A. Knapp for Appellant.

Lindsay & Gearhart and B. W. Gearhart for Respondents.

DOOLING, J., *pro tem.*—This is an action upon a note and mortgage. Judgment went for defendants below and plaintiff appeals. Defendants in their answer set up as an affirmative defense that the note and mortgage were procured by certain fraudulent representations of plaintiff and the trial court found in defendants' favor on this issue. In this behalf the court found that prior to the execution and delivery of the note and mortgage plaintiff, who is an attorney at law, promised and assured defendants, who are husband and wife, that he could and would in consideration thereof perform seven distinct legal services each of which is specifically set out in the findings; that he made said prom-

ises without any intention of performing, and did not perform them; that solely by reason of said promises and in reliance thereon defendants executed and delivered the promissory note and mortgage. The court further found that contemporaneously with the execution of the note and mortgage defendants also signed a certain agreement in writing which in terms bound plaintiff to perform only one of the seven legal services theretofore agreed upon in consideration of the giving of said note and mortgage but that this agreement was signed by defendants without reading it in reliance upon the false and fraudulent representation of plaintiff that the agreement embodied the promise to render all seven of the legal services theretofore agreed upon. This summary of the findings on this issue will suffice for a general understanding of the questions raised on the appeal. Other findings are discussed hereafter in connection with the consideration of certain claimed errors to which they are pertinent.

A large part of the briefs is devoted to the contention that certain of the findings are not supported by the evidence. The record is brought here by a bill of exceptions settled pursuant to the provisions of sections 648–653 of the Code of Civil Procedure. The only specification of insufficiency of the evidence in the bill of exceptions is in the following language: "That the evidence is insufficient to justify the decision of the court rendered in this action." Under the settled rule of practice in this state this specification is too general to permit this court to examine into the sufficiency of the evidence to support any or all of the findings. Section 648 of the Code of Civil Procedure provides in this regard that "when the exception is to the verdict or decision, upon the ground of the insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient." Under this provision of the code it has always been the rule that the bill of exceptions must, at the very least, specify the particular finding or findings which it is claimed are not supported by the evidence (*Mills* v. *Brady*, 185 Cal. 317, 320 [196 Pac. 776], and cases cited; *Schultz* v. *City of Venice*, 200 Cal. 50 [251 Pac. 913]), and this for the very good reason that "the adverse party may know what evidence by way of amendments to embody in the statement

or bill and that the trial court's attention may be directed to these designated matters." (*Crow* v. *Crow,* 168 Cal. 607, 611 [143 Pac. 689, 690].) It follows that in the absence of any more particular specification of the insufficiency of the evidence than that above quoted this court not only should not, but cannot, review the evidence set out in the bill of exceptions to determine whether or not it is sufficient to support the findings attacked. We may add, however, without discussing it, that an inspection of the record satisfies us that the findings are sufficiently supported by the evidence included in the bill.

Appellant urges that the court erred in permitting evidence to be introduced to show that the written agreement was signed by respondents without reading it in the belief, fraudulently induced by appellant's representations, that it embodied the terms of their previous oral agreement. In this behalf appellant contends that one who signs a written instrument is under the legal duty to ascertain its contents before signing it and, having failed to read it, cannot afterward attack it on the ground that he relied on the false representation of the other party that its contents were different from those which it actually contained. This is a question which has perplexed the courts of this and other jursdictions. The rule contended for by appellant is supported by the following California decisions: *Hawkins* v. *Hawkins,* 50 Cal. 558; *Kimmel* v. *Skelly,* 130 Cal. 555 [62 Pac. 1067]; *De Laval Supply Co.* v. *Steadman,* 6 Cal. App. 651 [92 Pac. 877]. The opposite rule is announced in an equal number of cases: *Wenzel* v. *Schulz,* 78 Cal. 221 [20 Pac. 401]; *Togni* v. *Taminelli,* 11 Cal. App. 7 [103 Pac. 899]; *Knight* v. *Bentel,* 39 Cal. App. 502 [179 Pac. 406]. In neither line of decisions is any reference to be found to the other. A similar contrariety of opinion exists in other jurisdictions. (See the cases collected in notes in 6 L. R. A. (N. S.) 463, and L. R. A. 1917F, 637.) It is said in 6 R. C. L., page 634, that "while there is always a sharp struggle in the courts between the desire to repress fraud upon the one hand, and on the other to discourage negligence and the opportunity and invitation to commit perjury, the rule seems to be settling down to hearing all the facts, still scrutinizing closely, and even suspiciously, the claim of a party to such an instrument that he had not read it." We are inclined to the

view, announced in this quotation, that upon a clear showing that a written instrument was executed by one party to it without reading it in the belief, induced by the fraudulent representations of the other party, that its provisions were different from those set out, the courts should set the agreement aside. Certainly it would be a reproach to our law if an attorney, in negotiating the terms of his employment by a client, could thus deliberately misrepresent the terms of a writing and hold the client to a bargain which he never intended to make. While theoretically, in agreeing upon the terms of such employment, the attorney and prospective client are dealing at arm's length with one another, and no relation of confidence ordinarily exists until the contract of employment is executed (*Cooley* v. *Miller & Lux*, 156 Cal. 510 [105 Pac. 981]), we cannot close our eyes to the fact that as a practical matter many people would sign such a contract without reading it, when prepared by an attorney, because of the fact that the drawing of contracts is a matter which the average person, and very rightly, feels is peculiarly a lawyer's business.

There is another factor in this case, however, which compels us to decide this point against appellant in any event. ▐ Whatever may be the diversity of opinion on this question where the parties are dealing at arm's-length it is the unquestioned rule that where the parties occupy a relation to one another which the law regards as confidential a written contract which one of the parties induces the other to sign by knowingly misrepresenting its contents may be set aside. (*Calmon* v. *Sarraille*, 142 Cal. 638 [76 Pac. 486].) ▐ It is alleged in paragraph 1 of defendants' separate answer and defense that at and prior to the time of the negotiations leading up to the execution of the writings here in question appellant was and had been "the attorney and confidential adviser of the defendants herein." While there is no specific finding covering this allegation, there is a blanket finding, VIII, "that all the allegations contained in the answer . . . of the defendants are true." This is a sufficient finding that the relation of attorney and client existed at the time of the negotiations as alleged in the answer. (*Continental B. & L. Assn.* v. *Wilson*, 144 Cal. 776 [78 Pac. 254].)

Appellant further urges that since the trial court found that appellant's misrepresentations consisted in the promise that he "could and would" perform certain legal services for respondents, and his ability to perform those services depended entirely upon the facts which were only known to appellant as related to him by respondents, that in the absence of a finding as to just what facts were related to appellant and whether those facts were true, his promise that he could and would do certain things amounted only to an expression of opinion based entirely on respondents' story and could not constitute actionable fraud. It is unnecessary for us to pass upon this interesting question. ■ The court found, as we have seen, that appellant orally agreed to perform seven distinct legal services for respondents and fraudulently induced respondents to execute a writing which they believed provided for all seven services, but which in fact provided for only one. It is clear from this that appellant in no event intended to perform, or to endeavor to perform, the six services which he caused to be omitted from the written agreement prepared by himself. A promise made with no intention of performing it is actual fraud. (Civ. Code, sec. 1572, subd. 4.) The gist of appellant's fraud in this case was not that he promised to do something which he could not do, but that he promised to do something which he did not intend to do.

■ Another of appellant's contentions is that the evidence shows that after full discovery of the fraud respondents ratified their contract with him. While not presented in that way, this contention really amounts to the claim that the trial court failed to find on the material issue of ratification. This issue was not raised by the pleadings since the issue of fraud was first set up by the answer. It arose, if at all, on the evidence, under section 462 of the Code of Civil Procedure. If the evidence would support a finding that respondents ratified the contract with full knowledge of the fraud the failure to find on that issue was error. (*Taylor* v. *Taylor,* 192 Cal. 71, 81 [51 A. L. R. 1074, 218 Pac. 756].) This rule necessitates an examination of the evidence on this point.

The bill of exceptions shows that respondent Frank Stefanich testified that after signing the contract he put it

away in his desk. He then testified: "I next saw this contract in July some time." Respondent Mary Stefanich testified: "I do not read English very well. I never went to school. I can read English if it is written plainly. I also write plain English, with a lot of mistakes. I did not read the contract marked Exhibit A and attached to the cross-complaint. I read it long afterwards. It is very difficult to read. There are lots of words in it that I do not understand. I did not read it until long after it was written and signed, probably in August." Two letters were introduced in evidence written by Mrs. Stefanich to appellant. One was dated August 6, 1923, and signed Frank Stefanich, but Mrs. Stefanich testified that it was written by her. In this letter appellant's conduct of the suit referred to in the written contract was discussed and he was told to try to settle matters amicably. "If not then you can do what is best." The second, dated September 23d, is signed by Mrs. Stefanich and without mentioning any litigation by name says that I "do hope you can win both cases very soon to show others that you can. I did hear lot of misunderstandings in S. F., but does not bother me any." The evidence shows that appellant was discharged by respondents some time in October.

From this meager testimony appellant argues that respondents, after they had full knowledge of the fraud, elected to ratify their contract with him and retain his services, citing *Nounan* v. *Sutter Land Co.*, 81 Cal. 7 [6 L. R. A. 219, 22 Pac. 515]; *Schmidt* v. *Mesmer*, 116 Cal. 267 [48 Pac. 54]. We do not think that the evidence is sufficient to support this contention.

"When the original fraud is clearly established by circumstances not liable to doubt, a confirmation of such a transaction is so inconsistent with justice, so unnatural, so liable to be connected with fraud, that it ought to be watched with the utmost strictness, and to stand only upon the clearest evidence as an act done with all the deliberation that ought to attend a transaction the effect of which is to ratify that which in justice ought never to have taken place." (*Morse* v. *Royal*, 12 Ves. 373, quoted in *Green* v. *Duvergey*, 146 Cal. 379 [80 Pac. 234].) ▮ Ratification of a fraudulent transaction can only be made where there is a full knowledge of the facts constituting the fraud

(*Siebold* v. *Berdine,* 61 Cal. App. 158 [214 Pac. 655]) and depends primarily on the intention of the party as shown by his declarations, acts and conduct. (*French* v. *Freeman,* 191 Cal. 579, 590 [217 Pac. 515].)

In the light of these principles we are satisfied that the evidence above quoted is not sufficient to support a finding of ratification. The burden of proving ratification was on appellant. The testimony of Stefanich that he "saw" the contract again in July does not establish that he read it then. And even if he did read it in July he had nothing to do with the writing of either letter and the evidence is silent as to whether he had knowledge of their writing. Mrs. Stefanich's testimony that she read it probably in August does not fix any definite date and is qualified by her testimony that she does not read English well and found the contract difficult to read and much of that she did not understand. How much she understood when she did read it is left to speculation. It is likewise left in complete uncertainty whether the letter of August 6th was written before or after Mrs. Stefanich had read the contract. What cases are referred to in the letter of September 23d is equally undetermined. These are all matters which counsel for appellant could have cleared up by further questions, and neither this court nor the trial court would be justified in spelling out a ratification from the fragmentary testimony which was elicited. This evidence neither shows the full knowledge of fraud nor the unequivocal intent to waive the fraud and abide by the contract which are essential to ratification. ■ The failure to make a finding which would necessarily be adverse to appellant is not reversible error. (*Furlong* v. *White,* 51 Cal. App. 265, 272 [196 Pac. 903].)

■ Respondents cross-complained for two thousand dollars alleged to have been paid to appellant before discovery of the fraud. As to this payment the court found "that said sum was and is ample, just and reasonable compensation to plaintiff for any and all legal services rendered by plaintiff." Appellant complains that this finding is outside the issues and not supported by the evidence. It is difficult to see how appellant is injured thereby. The suit was one for foreclosure of a mortgage and the judgment simply decrees that the note and mortgage are void and

that plaintiff take nothing. As to the services agreed to be rendered by appellant in consideration of the note and mortgage the court found that they were not performed and this finding cannot be reviewed because of the insufficiency of the specification hereinabove discussed. If appellant performed any other services for respondents the judgment in this case would not be *res judicata* in a suit to recover for them.

This disposes of all the errors alleged except those directed to the insufficiency of the evidence to support the findings.

The judgment is affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 4, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 4, 1929.

All the Justices concurred.