[Civ. No. 4145.   Fourth Dist.   Nov. 30, 1950.]

JOHNSON TRADE, INC., Respondent, v. LLOYD
FRIMMERSDORF et al., Appellants.

Frank W. Doherty for Appellants.

Powell and Banyard for Respondent.

MUSSELL, J.—The defendants appeal from a judgment in favor of plaintiff for the sum of $20,000 and interest, awarded by the court as damages for the alleged breach of a contract.

It is alleged in the complaint that on or about June 10, 1947, the plaintiff placed its purchase order with the defendants for 10 complete units D-8 tractors with Dozer attachments, at a price of $9,500 per unit; the acceptance of the purchase order by the defendants; the performance of the terms thereof by the plaintiff; and the failure to perform by defendants to plaintiff's damage in the sum of $25,000.

Defendants filed an answer alleging, among other things, that the purchase order was signed by Bernard Touhey as the agent of defendant Lloyd Frimmersdorf and that at the time the order was signed, Touhey advised plaintiff that Frimmersdorf had ordered the D-8 tractors referred to in the purchase order from the War Assets Administration and that the sale and delivery of the said tractors were conditioned upon defendant Frimmersdorf obtaining the tractors from the War Assets Administration; that plaintiff accepted this condition and that the War Assets Administration failed to deliver the D-8 tractors to defendant.

The defendants contend (1) That the evidence does not support the finding of the trial court that the sale and delivery of the tractors were not conditioned upon the defendants' obtaining a transfer of title to the tractors from the War Assets Administration and that the plaintiff did not accept such a condition; (2) That there was no substantial evidence to sustain the findings of the trial court as to the market value of the tractors sold; and (3) That the purchase order was a unilateral contract, the subject of which never materialized.

The purchase order, as far as here applicable, is as follows:

"Purchase Order
Johnson Trade Inc.
207 North Broadway
Santa Ana, California

No. 4721
Date June 10, 1947.

To: Bernard Touhey
Commodity: D.8 Tractors (Complete with Dozer attachments)
Brand:

Specifications: Unused—new condition.
Packing:
Quantity: 10 complete units.
Shipment: On arrival San Francisco—June or July.
Price: $9,500.00 each net dock San Francisco.
Weights:
Shipping Point:
Payment: Sight draft secured by Domestic Letter of Credit.
Consignee: Johnson Trade Inc.
Destination: San Francisco.
For Resale—California Resale Permit No. E 54876.
Remarks: This order is subject to acceptance of Units by Buyer after arrival and inspection.
Accepted: Bernard Touhey.''

The evidence upon which defendants rely to establish a conditional sale and delivery of the tractors involved consists of testimony as to conversations had between the parties.

Bernard Touhey, agent of the defendant Lloyd Frimmersdorf, stated in his deposition that he received the purchase order about the 12th of June or July, 1947; that before signing it, he had a conversation over the telephone with Mr. Sullivan, a vice-president of plaintiff corporation, in which he informed Mr. Sullivan that the contract was to go into effect, if, as and when Mr. Frimmersdorf received the tractors from the War Assets Administration; that this statement was also made to Mr. Jones, an employee of plaintiff and that he did not recall the exact words which Mr. Sullivan used in reply.

The testimony of Hal P. Jones, a former employee of plaintiff, introduced by deposition, was, in part, that Mr. Touhey informed him that he and Mr. Frimmersdorf had 17 tractors coming from the south Pacific and that they were ''war assets.'' That he informed Mr. Johnson, the president of plaintiff corporation, that the tractors were war surplus and that they were coming from the south Pacific. However, he also stated that in the original negotiations with Mr. Touhey ''there was really nothing definite at all. There was no deal at all until I talked to Johnson after I got back to Santa Ana. I made the preliminary negotiations with Mr. Touhey, but the final negotiations were made by Johnson. I got the price and then I turned the deal over to Johnson.''

Mr. Johnson testified that prior to the signing of the purchase order, he inquired of Mr. Touhey where the tractors were and that the following conversation took place:

" 'Now, Barney, you understand that we do not want to monkey around with any contract of someone who thinks they are going to obtain something from the War Assets Administration. We know that these are government surplus, no doubt.' We used the term in our purchase order, to make it eminently clear that we understood that they were not factory-new tractors, but they were unused, had not been used. I said, 'Now, before I go any further with this matter, Barney, I must know, positively, and have your assurance—' I was most emphatic about it, that Mr. Frimmersdorf owned these tractors; that they bought them and paid for them and they are their property, and they will, in due course, will arrive and be delivered to us on the dock in San Francisco. I was most emphatic about it and I had positive assurance from Mr. Touhey that that was the case, that Frimmersdorf and Associates had owned them, bought them and paid for them; their property.''

In response to a question by defendants' counsel as to whether Mr. Touhey had told Mr. Johnson that Mr. Frimmersdorf was engaged in the business of buying war surplus products and selling them, Mr. Johnson testified as follows:

"He told me that Mr. Frimmersdorf and associates owned a great deal of equipment which they obtained from the War Assets Administration, had bought and paid for it."

There is an apparent conflict in the foregoing testimony as to whether the purchase order was conditionally signed by Touhey. The order itself does not contain any language indicating that it was to take effect only, if, as and when defendants obtained the tractors from the War Assets Administration. The order was prepared by Johnson and mailed to Touhey in Arizona. It was there received by him and retained for two or three days. Before mailing it back to plaintiff, Touhey could easily have added such a condition, if it in fact had been agreed upon. The fact that he did not is some evidence that he accepted the contract as written. There was no definite agreement reached other than the written contract itself.

■ The weight and sufficiency of the evidence, the construction to be put upon it and the inferences to be drawn therefrom as well as questions as to the credibility of the witnesses and the determination of conflicts and inconsistencies in their testimony were matters for the trial court. (*Dillard v. McKnight*, 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].) ■ Defendants have not demonstrated that there is

no substantial evidence to support the challenged findings. Under such circumstances this court cannot substitute its deductions for those of the trial judge. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550]; *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) The rules announced in the foregoing cases are applicable to the finding of the trial court as to the market value of the property here involved.

■ Witness J. M. Johnson, president of plaintiff corporation, testified that the corporation was in the business of exporting heavy industrial equipment, including tractors of the type here involved; that after the execution of the purchase order, he negotiated with the Industrial Equipment Company for the sale of the tractors and signed and received purchase orders therefor; that he had other offers for the purchase of these particular tractors at $12,500 each; that he was acquainted with the market value of tractors of this type; and that the market value of tractors of the type involved ranged from $12,000 to $15,300.

Mr. Sullivan, vice-president of plaintiff corporation, also testified that he was familiar with the sale and purchase of tractors similar to those involved and that the market value was approximately $13,500 per unit.

The sufficiency of the showing of qualifications of these witnesses to testify as to market value was a matter resting largely in the discretion of the trial court and its ruling will not be disturbed where, as here, there is substantial evidence to support it. (*Humiston* v. *Hook,* 86 Cal.App.2d 101, 105 [194 P.2d 122]; *Morrison* v. *Jose,* 57 Cal.App.2d 795, 805 [135 P.2d 586].) As was said in *Mirich* v. *Balsinger,* 53 Cal. App.2d 103, 114 [127 P.2d 639]:

"The determination of the competency of a witness to testify as an expert is in itself in the nature of a trial of a question of fact addressed to the judge alone, and as in other decisions on questions of fact by a trial judge, his ruling thereon, being a matter of discretion, will not be overturned on appeal save and except when there is an actual want of evidence to support it or a clear abuse of discretion in ruling upon the evidence proffered upon the subject. When there is any substantial evidence to support the ruling of the trial judge, it will be upheld."

■ Finally, it is contended that the purchase order was a unilateral contract and could not be enforced as the subject

matter was not in existence. This contention is without merit. The time of the performance of the contract was June or July, 1947, and it is uncontradicted that the tractors were not delivered to defendants. The evidence indicates that defendants had agreed to purchase the tractors from the War Assets Administration but that for some reason the purchase was never completed. There is no evidence in the record that the tractors did not in fact exist. The fact that the purchase order recited that it was subject to acceptance of units by buyer after arrival and inspection did not discharge defendants from the obligations of the contract.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 19, 1950, and appellant's petition for a hearing by the Supreme Court was denied January 25, 1951.