[Civ. No. 20135. Second Dist., Div. Three. Oct. 18, 1954.]

JOHN CHUNG, Respondent, v. GEORGE W. JOHNSTON et al., Appellants.

Hall & Kent for Appellants.

Carl Yanow for Respondent.

VALLÉE, J.—Appeal by defendants from a judgment which decrees that plaintiff convey to defendants a parcel of realty; and that plaintiff have judgment against defendants for $7,086.34, secured by a lien on the property conveyed.

Plaintiff is an educated Korean but does not speak the English language fluently. Defendants are husband and wife; the husband, when he acted alone, will be referred to as defendant. Since 1946 defendant had acted as plaintiff's broker in buying and selling real estate and in investing his funds. The claim of plaintiff is that defendants induced him to convey to them a parcel of realty described as the Byram Street property, stating they would hold title for him; that the state condemned the property; that defendants received the proceeds from the state and delivered to plaintiff a purported accounting which included a charge for a parcel of realty described as the Fourth Street property and other claimed expenditures, all made without plaintiff's consent.

In 1946 plaintiff purchased the Byram Street property, subject to a first and a second deed of trust. Plaintiff became delinquent in the interest payments on the second deed of trust, and sometime thereafter defendant acquired it. On September 21, 1949, plaintiff by grant deed conveyed the

Byram Street property to defendant to be held in trust for him. No written contract was entered into. Subsequently the state concluded to acquire the property. On April 3, 1951, plaintiff and defendants signed an agreement with the state by which the latter was to pay a total of $40,266.33 for the property—free and clear of all liens, encumbrances, and certain other items. On June 20, 1951, the state issued a check to plaintiff and defendants for $23,841.39, which represented the purchase price less the first deed of trust and other items.

Defendants had at one time sold to William Coulter property described as the Fourth Street property. On January 27, 1951, defendants entered into a written agreement with Mr. Coulter to buy back the Fourth Street property on or before June 1, 1951. The property was "farming land" on the front of which defendant had his real estate office and in the rear there was a house. Plaintiff testified he never was consulted about this property until July 16 when he refused to buy it because he didn't want that kind of property. Plaintiff had always bought "apartment house income property."

On June 16, 1951, in an instrument prepared by defendant, Charles Rubio, Jr., agreed to sell and plaintiff agreed to buy property known as the Euclid Avenue property for $3,800. The instrument stated, "It is understood and agreed that we shall receive our cash on or before July 15th, 1951, as the buyer shall receive his cash from the California Highway Commission." There was a duplex on the property and defendant offered to find a tenant for one of the apartments for plaintiff.

On July 13 defendants received the check from the state. On July 16 Mr. and Mrs. Coulter went to defendant's office and executed the deed conveying the Fourth Street property to plaintiff. Mr. Coulter testified he signed the deed naming plaintiff as grantee at the request of defendants who stated they wished the title to run directly from Coulter to plaintiff. He also testified he never had negotiated with plaintiff and when he executed the deed plaintiff was not there, nor had he ever met plaintiff. Defendants admitted they had no writing with plaintiff concerning this property. They never told plaintiff they had previously owned the property nor that they had an option to repurchase it. Defendants did not require a title policy of any kind from Coulter, and the transaction did not go through escrow although previous transactions had. The next day, July 17, plaintiff went to defendant's office and received the deed. He recorded the instrument the same day. Plaintiff testified that he was not told the deed which he re-

ceived was for the Fourth Street property; it was not until August 16 that he discovered he had purchased this particular piece of property; he thought the deed was for the Euclid Avenue property. When plaintiff learned he had purchased the Fourth Street property, he told defendant to take it back, that he didn't want that kind of property because he had no use for it.

On July 17 plaintiff learned that defendants were intending to withhold the purchase price of the Fourth Street property from the state funds then in their hands and to account to him only for the balance. Plaintiff endorsed the check on the representation of defendants that they would deposit it and as soon as a computation could be made he would receive what was coming to him. From July 17 onwards plaintiff made numerous demands on defendants for an accounting.

On August 16, when plaintiff tried to move his furniture into the duplex on Euclid Avenue, he learned for the first time that he had not purchased that property. Without plaintiff's authorization defendant had the furniture placed in a store on Whittier Boulevard. Later defendant Mrs. Johnston received three bills from the moving company and paid a total of $261.10.

On August 20 defendants issued a check to plaintiff for $9,345.89 and told him to sign a receipt which read: "Received of K. A. Johnston, George W. Johnston and Johnston Agency, the sum of Nine Thousand three hundred forty-five and 89/100 Dollars ($9,345.89) as payment in full of all claims of whatsoever nature in connection with the operations of our businesses, up to this date." Plaintiff testified he told defendants he "figured there is too much shortage of money, I am supposed to get around nineteen or twenty thousand and here is just nine thousand"; that defendants said that when the down payment for the duplex, the Euclid Avenue property, and the escrow fee are deducted he would have $5,600 less, and he (plaintiff) said, "Well, have to be in there or else I won't sign," that defendant replied, "If you don't sign we will just keep it and just hold it in trust fund just as we have done many years, you sign this if you want to see your money again"; at that time he was in need of money and defendants stated they would give him an accounting. He then signed the receipt.

On September 7 defendants forwarded an accounting to plaintiff in which they charged him $2,000 as a commission for the sale by them of the Byram Street property although there

was no written contract with plaintiff for a commission. Defendants also charged plaintiff with the purchase price of the Fourth Street property and certain other items which they claimed to have laid out in the month of March with respect to that property. Defendants collected the August, September, and October rents from the tenant of the house on the Fourth Street property, and sent them together wiih the rent for their real estate office on the same property to plaintiff. Plaintiff cashed all the checks except the October rent check for $25 from defendants. He offered to return it to them. In October plaintiff appointed Mayer Royal as his collection agent. In November defendants moved from the Fourth Street property. Thereafter and up until the time of trial the real estate office remained vacant. Plaintiff continuously collected the rent from the tenant of the house, made mortgage payments on the property, and paid the taxes.

After September 17 plaintiff made numerous demands on defendants for the return of his money and tendered to them a deed to the Fourth Street property. The demands were ignored. In December 1951 plaintiff brought this action for money had and received.

The trial court found: the purported disbursements and deductions shown in the accounting for the purchase of the Fourth Street property in the sum of $5,222, the commission of $2,000 for the sale of the Byram Street property to the state, the expenditure of $71.17 for repairs on the Fourth Street property, and the payment of half the expense in moving plaintiff's furniture in the sum of $130.55—total charges of $7,423.72—were made without plaintiff's consent, with a fraudulent intent on the part of defendants to deceive and defraud plaintiff and to deprive him of his money; plaintiff made numerous demands on defendants for the return of his money, but they refused and failed to do so; he tendered to them a deed of the Fourth Street property; the receipt given by plaintiff to defendants did not release them from the claim sued upon. The court decreed: (1) plaintiff deed back to defendants the Fourth Street property; (2) plaintiff account for the receipts of rent during such time as he had the same, less certain expenditures, and that defendants be credited with the difference of $337.38; (3) plaintiff have judgment for the sum of $7,423.72 less the credit of $337.38, or $7,086.34, with interest, which judgment should constitute a first lien on the Fourth Street property. Defendants appeal from the judgment.

Defendants' specifications of errors are: 1. The evidence is insufficient to support the finding that plaintiff did not execute a receipt in full settlement. 2. The evidence is insufficient to support the finding that plaintiff by his conduct did not accept or ratify the transfer of the Fourth Street property and the settlement. 3. There is no evidence to support the finding that defendants concealed from plaintiff the fact that the state intended to condemn his property for a highway. 4. There is no evidence to support the finding plaintiff demanded that defendants reconvey the Byram Street property to him. 5. The court abused its discretion in denying defendants' motion to reopen the cause.

Defendants pleaded payment of $9,345.89 to plaintiff and execution by plaintiff of a receipt in full settlement. The trial court found that this allegation was not true. Defendants contend the evidence does not support the finding. This first assignment of error appears to ignore the finding that certain disbursements and expenditures were made and deducted from the money held by defendants for plaintiff without plaintiff's consent, with a fraudulent intent to deceive and defraud plaintiff, and to deprive him of his money.

An obligation is extinguished by a release in writing, with or without a new consideration, given by the creditor to the debtor. (Civ. Code, § 1541.) However, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (Civ. Code, § 1542; 22 Cal.Jur. 764, § 13; 45 Am.Jur. 694, § 30; 171 A.L.R. 184.) It is sufficient that the creditor does not know or suspect their existence. (22 Cal.Jur. 764, § 13.) As with other contracts, assent to a release is not real and free when obtained through fraud, and the release may be avoided if the facts are sufficient to bring the case within the provisions of the Civil Code defining fraud. (22 Cal.Jur. 758, § 8.)

 Before there can be a waiver there must be full knowledge on the part of the party defrauded. (*Ellis* v. *Jones*, 121 Cal.App. 325, 329 [8 P.2d 933].) It cannot be claimed that the receipt had the effect of releasing something not then known to plaintiff. The only evidence called to our attention indicates that plaintiff discovered the fraud after the receipt was signed. Not until September 7, when plaintiff was sent the accounting, did he learn what items were included in the charges and for what items deductions had been made. Only at that time was he in possession of all the material

facts. ▉ Defendants were in a fiduciary capacity to plaintiff and owed him the duty of fully revealing every transaction and disclosing all the facts.

Defendants argue that fraud was not shown by clear and convincing evidence. ▉ The burden was on plaintiff to show fraud by a preponderance of the evidence and the decision of the trier of fact must be according to the preponderance of the evidence. (Code Civ. Proc., §§ 2061, subd. 5, 2103.) ▉ The expression sometimes found in the decisions to the effect that fraud is to be established by "clear and convincing evidence" states nothing more than a rule of evidence directed to the trial court; and if that court finds that fraud is established by a preponderance of the evidence, a reviewing court must accept that determination as conclusive if there is substantial evidence to support it. (*Baines* v. *Zuieback*, 84 Cal.App.2d 483, 488 [191 P.2d 67].) ▉ A presumption of fraud may arise in the case of a fiduciary relationship from which an undue advantage was gained. ▉ Here a fiduciary relationship existed, and there was substantial evidence showing that defendants secured an advantage which plaintiff did not intend. This raised a presumption of fraud, and the burden was cast on defendants to show fairness and good faith in all respects. ▉ A presumption of fraud is sufficient to support a finding thereof. (*Solon* v. *Lichtenstein*, 39 Cal.2d 75, 82 [244 P.2d 907].) The fraud perpetrated by defendants vitiated the receipt. (45 Am. Jur. 686, § 21.) The trial court was warranted in finding that the receipt was of no force or effect.

Defendants assert that the receipt by plaintiff of the August, September, and October rents from them, the receipt of the rent continuously from August to the time of trial from the tenant of the residence, the appointment by plaintiff of an agent to collect the rents, and the making of mortgage payments constitute an affirmation and ratification of the conveyance of the Fourth Street property to him and of the settlement.

In the case of fraud the courts are reluctant to spell out a ratification unless the evidence thereof is clear. ▉ Ratification of a fraudulent transaction can only be made where there is full knowledge of the facts constituting the fraud, and depends primarily on the intention of the party defrauded as shown by his declarations, acts, and conduct. (*Mazuran* v. *Stefanich*, 95 Cal.App. 327, 334-335 [272 P. 772].) It is necessary that ratification be with full knowledge of the party's rights and be clearly shown. ▉ Even in the case of de-

liberate election after discovery of fraud, equity may give relief against ratification by conduct that is merely thoughtless or inadvertent. (*People* v. *S. W. Straus & Co.*, 158 Misc. 186 [285 N.Y.S. 648], modified in part, 248 App.Div. 785 [289 N.Y.S. 209], aff. 248 App.Div. 785 [290 N.Y.S. 423].) ▉ Waiver of fraud is a question for the determination of the trier of fact. (*French* v. *Freeman*, 191 Cal. 579, 590 [217 P. 515].) No general rule fits all cases. ▉ The question whether acts of the defrauded party do or do not constitute a waiver must be determined in connection with the circumstances of each case. (12 Cal.Jur. 793, § 57.)

▉ Plaintiff does not speak nor understand English well. For more than five years he had been dependent on defendants to assist him with his real estate transactions. A fiduciary relationship existed between plaintiff and defendants. Defendant helped plaintiff to purchase and finance the properties while Mrs. Johnston did the bookkeeping. Defendants also collected the rents, made the necessary disbursements, and gave plaintiff the difference. From July 17 until September 7 plaintiff demanded an accounting from them and they promised to prepare one. Not until September 7 did defendants send an accounting to him. At that time plaintiff learned what charges had been deducted as expenditures from the state money held by defendants for him. Plaintiff then made numerous demands on defendants for the return of his money and tendered to them a deed to the Fourth Street property which they purportedly purchased for him.

Plaintiff collected $55 a month for approximately eighteen months from the tenant of the house on the property; he received $25 a month for three months from defendants for rent of the real estate office. Defendants moved out of the real estate office in November 1951. From that time until the trial the office was vacant. The court found that plaintiff had received $1,115 in rents during the period he had the Fourth Street property in his possession. Plaintiff made monthly mortgage installment payments of $35, paid taxes, and met other charges. The court found that plaintiff made expenditures in the amount of $777.62. It credited defendants with the difference of $337.38. From the evidence it may be assumed that the trial court found that plaintiff collected the rents for the purpose of paying the mortgage, taxes, and other charges, thereby protecting the property against foreclosure of the mortgage and avoiding the possibility of having the taxes become delinquent. No prejudice resulted to defend-

ants. (See *Shermaster* v. *California Home Bldg. Loan Co.,* 40 Cal.App. 661 [181 P. 409].) The questions of waiver of the fraud and ratification of the transaction were for the trial court. It cannot be said on review, as a matter of law, that plaintiff intended to and did waive the fraud complained of or that he ratified the transaction. (See *Johnson Trade, Inc.,* v. *Frimmersdorf,* 100 Cal.App.2d 719, 722 [224 P.2d 771].)

We hold that the evidence is sufficient to support the findings that the receipt given by plaintiff to defendants did not release them from the claim sued upon and that plaintiff did not waive the fraud or ratify the transaction. These findings are enough to support the judgment. It will not be necessary therefore to discuss the third or fourth specification of error.

After the trial court had orally announced its decision, but prior to judgment, defendants moved to reopen the cause based on an affidavit filed by defendant Mrs. Johnston. The motion was denied. Defendants claim the court abused its discretion. Defendants sought to offer the following evidence: (1) A document alleged to be a certified copy of an application for travel abroad from the office of the Korean Consulate General for plaintiff indicating an expected departure in October 1949. (2) The testimony of Mrs. Johnston that the second deed of trust was assigned to defendants on June 26, 1950, a time subsequent to the execution of the deed by plaintiff conveying the Byram Street property to defendant. (3) The testimony of Mrs. Johnston that an agreement was drawn by her from her shorthand notes, providing for the management of the Fourth Street property by defendant and executed by plaintiff in the latter part of July 1951. No showing was made as to why this evidence was not available at the trial. The ruling on a motion to reopen a cause is a matter of discretion which will not be disturbed on appeal in the absence of a clear abuse thereof. (*Kaplan* v. *Hacker,* 113 Cal.App.2d 571, 573 [248 P.2d 464]; *Mazzenga* v. *Rosso,* 87 Cal.App.2d 790, 794 [197 P.2d 770].) We find no abuse of discretion.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.